Stanley HOWERTON and Helen Howerton, Appellants–Plaintiffs,

v.

RED RIBBON, INC., Super 8 Motels, Inc., and Sterling Plumbing Group f/k/a Sterling Faucet Co., Appellees–Defendants.

No. 18A02–9806–CV–504.

Court of Appeals of Indiana.

Sept. 7, 1999.

964

William K. Deer, Esq., McTurnan & Deer, Indianapolis, Indiana, Attorney for Appellant.

Marianne L. Vorhees, Beasley Gilkison Retherford Buckles & Clark, Muncie, Indiana, Attorney for Appellees Red Ribbon, Inc. and Super 8 Motels, Inc.

Karl L. Mulvaney, Nana Quay–Smith, Phil L. Isenbarger, Bingham Summers Welsh & Spilman, Indianapolis, Indiana, Attorneys for Appellee Sterling Plumbing Group.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Stanley and Helen Howerton appeal the trial court's grant of judgment on the evidence entered in favor of defendants Red Ribbon, Inc., Super 8 Motels, Inc, and Sterling Plumbing Group f/k/a/ Sterling Faucet Co. ("Sterling") upon the Howertons' complaint against the defendants.

We affirm.

### ISSUES

1. Whether expert testimony of the Howertons' witness James McCann, an engineer, was improperly excluded.

2. Whether the trial court erroneously granted motions for judgment on the evidence
    (a) by Sterling and
    (b) by Red Ribbon and Super 8.

### FACTS

On the night of April 11, 1994, Stanley Howerton checked into the Super 8 Motel in Daleville. The next morning, he soaked in warm water in the bathtub for about fifteen minutes. As Howerton raised himself up to exit the tub, he grasped the grab bar on the side wall of the bathtub-shower unit ("the unit"). According to Howerton, he pulled himself about half-way up using the bar. The bar supported his weight, and it did not move. However, as he continued to pull on the bar to further raise himself, "the bar came out" and he fell, injuring his knee. (R. 579).

Subsequently, the Howertons filed a complaint against Red Ribbon and Super 8, alleging they had breached "their duty to maintain their property in a reasonably safe condition." (R. 27). Red Ribbon owned the motel and the real estate where the motel was located, and it operated the motel. Red Ribbon and Super 8 had a franchisee/franchisor relationship, with Super 8 being the franchisor. Super 8 had no direct control over the operation of the motel. The Howertons amended their complaint and added Sterling as a defendant, alleging Sterling's "negligence in design and manufacture" of the unit and that the unit "was in a defective condition unreasonably dangerous to Mr. Howerton." (R. 31).

At trial, the Howertons presented evidence over the course of two days. According to Jerry Martin, products manager for the plumbing supply company that sold the unit, the units had cotter pins at each end of the grab bar. The bar fit through holes in molded fiberglass shelves in the back wall of the unit.

A hearing outside the presence of the jury was held on Sterling's motion in limine that challenged expert testimony by engineer James McCann as lacking in foundation regarding design and manufacture of the unit and, therefore, unreliable. After the hearing, the trial court ruled that expert testimony by McCann "would serve to confuse the jury and [was] not supported by reliable scientific principles." (R. 624). Therefore, McCann was prevented from rendering an opinion that the unit was defectively manufactured or defectively designed. However, McCann was allowed "as a fact witness to testify what he observed" about the unit and to identify himself as an engineer. (R. 625). McCann testified that when he examined the grab bar under a microscope, he observed microscopic signs of wear near the hole on one end of the bar.

At the conclusion of the Howertons' presentation of evidence regarding liability, all defendants moved for a judgment on the evidence. The trial court granted the motions.

## DECISION

### 1. *Exclusion of Evidence*

The Howertons claim the trial court erred in excluding McCann's testimony "that the grab bar of the shower tub unit at issue was defective, both in design and manufacture."[1] Howertons' Brief at 7. Specifically, the Howertons contend the trial court erred in "appl[ying] the *Daubert* standard ... because McCann was providing technical, not scientific, testimony." *Id.* at 8. The analysis of *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), they argue, "does not apply to all expert testimony, only scientific testimony." *Id.* Moreover, their argument continues, Indiana Evidence Rule 702 does not require an analysis of underlying scientific principles for technical testimony but only for scientific testimony, by its express terms as follows:

**Testimony by Experts**

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.[2]

Under Evid. R. 702(a), the expert testimony must convey knowledge that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Evid. R. 702(a) assigns to the trial court a gatekeeping function of ensuring that an expert witness' testimony both rests on a reliable foundation and is relevant to the task at hand. *Hottinger v. Trugreen Corp.,* 665 N.E.2d 593, 596 (Ind.Ct.App.1996), *trans. denied.* Knowledge admissible under the Rule must connote "more than subjective belief or unsupported speculation." *Id.* A valid scientific connection between the expert testimony and the pertinent inquiry is a precondition to

admissibility. *Id.* Further, in exercising its discretion under Evid. R. 702(a), the trial court also must consider Ind. Evidence Rule 403, which permits exclusion of otherwise admissible evidence if the risk of jury confusion substantially outweighs the probative value of the evidence. 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE, § 702. 105, at 354 (1995).

According to the trial court's ruling, one reason McCann's expert testimony was excluded was because it would "serve to confuse the jury." (R. 624). The trial court so ruled after McCann's answers to preliminary questions by Sterling's counsel revealed that McCann

— did not examine the entire unit but only looked at it still installed in the wall;

— did not remove the unit to examine its back;

— did not know whether any water damage to the unit had occurred;

— did not perform any tests on the unit or on the grab bar;

— did not test any exemplars;

— had no knowledge about how the unit was installed;

— had no knowledge about how the unit was manufactured;

— could not say which end of the grab bar had come from which hole in the unit;

— had no knowledge of any other failure of a unit manufactured by Sterling;

— had no knowledge of the condition of the unit when it left Sterling in 1989;

— knew of no evidence that there was a problem with the grab bar during the unit's 4½ years of use at the Super 8;

— did not know the strength of the bar;

— had not reviewed design standards for grab bars;

— did not know Sterling's manufacturing procedure for installing a grab bar in a unit;

— had no evidence regarding the condition of the unit at the time it was installed;

---

1. At the hearing on the motion in limine, the Howertons' counsel made a proffer indicating that McCann would so testify.

2. Federal Evidence Rule 702, the subject of *Daubert,* is identical to Indiana's Evidence Rule 702(a), but has no provision like 702(b).

— did not know the strength or exact composition of the unit's fiberglass; and

— had performed no research seeking literature related to grab bars or similar units.

Because McCann did not undertake to perform these myriad tasks, we agree with the trial court that McCann's opinion of a defect in the manufacturing and design of the unit would not be reliably or scientifically "connected" to the principles of engineering, and any such opinion by him is thereby rendered more likely to be "subjective belief or unsupported speculation." *See Hottinger.*

■ The trial court's function as a gatekeeper and its determination of admissibility under Evid. R. 702 is reviewed under an abuse of discretion standard, *see Jervis v. State,* 679 N.E.2d 875, 881 (Ind.1997), as is a trial court decision applying Evid. R. 403. *See Tompkins v. State,* 669 N.E.2d 394, 398 (Ind.1996). On appeal, the Howertons have not challenged the trial court's finding that McCann's expert testimony would serve to confuse the jury. After having reviewed McCann's statements as described above, we cannot say that the trial court abused its discretion in excluding McCann's expert testimony on the basis that it would confuse the jury.[3]

### 2. *Judgment on the Evidence*

■ Indiana Trial Rule 50(A) provides that when issues tried before a jury are not supported by sufficient evidence, the court shall withdraw such issues from the jury and enter judgment thereon. On appeal, we apply the same standard as the trial court. *First Bank of Whiting v. Schuyler,* 692 N.E.2d 1370, 1372 (Ind.Ct.App.1998), *trans. denied.* We consider the evidence in the light most favorable to the non-moving party, and only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim may judgment on the evidence be entered. *Id.*

### a. *Sterling*

The Howertons contend that judgment on the evidence was improperly granted to Sterling because there was testimony regarding the "possibility" that a cotter pin might never have been installed at one end of the bar. They support their argument solely by citation to *Noblesville Casting Div. of TRW v. Prince,* 438 N.E.2d 722 (Ind.1982), which held that the testimony of a possibility, combined with other evidence, could support a verdict. In *Noblesville,* the witness testifying to the possibility was a physician, who answered a series of preliminary questions about the patient's condition and history and then concluded that a causal connection between certain events and an injury was "possible." *Id.* at 726.

■ Here, the evidence on which the Howertons rely as being sufficient to establish the possibility of a defect in the manufacture and design of the unit came in the form of an opinion from Keith Peterson as to the possibility of a missing cotter pin. Peterson was a contractor involved in the construction of more than a hundred motels and had supervised the installation of several thousand bathtub/shower units. Without more and simply following the question of whether it was possible that a cotter pin was never installed, Peterson replied that "[i]n things mechanical, practically anything is possible I think." (R. 690). Our reading of *Noblesville Casting* leads us to conclude that Peterson's testimony does not constitute the testimony of a fact being "possible" as contemplated by that opinion. Accordingly, it does not establish the "possibility" sufficient under *Noblesville Casting* to warrant our reversing the trial court's order of judgment on the evidence.

### b. *Red Ribbon and Super 8*

■ The Howertons' claim against Red Ribbon and Super 8 was based on premises liability. As Red Ribbon acknowledges,

---

**3.** Having found that the trial court's decision to exclude McCann's testimony on the basis that it would confuse the jury was not an abuse of discretion, we decline to address the Howertons' argument that McCann's expert testimony was technical rather than scientific in nature and, therefore, not subject to a determination by the trial court as to the reliability of the testimony's underpinnings.

Howerton was an invitee to whom it owed a duty to exercise reasonable care. *See Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind.1991). A landowner is subject to liability for an invitee's injury by a condition on the land if the landowner "knows or by the exercise of reasonable care would discover the condition." *Id.* at 640.

The Howertons direct us to the case of *Barsz v. Max Shapiro, Inc.*, 600 N.E.2d 151 (Ind.Ct.App.1992), for the proposition that "liability will ... attach if there is evidence that a defendant unreasonably failed to discover and remedy [a] hazardous condition." Howertons' Brief at 15. According to the Howertons, proper inspection by Red Ribbon "should have discovered the defect" of the unit. *Id.* at 16.

In *Barsz*, the plaintiff was a patron at Shapiro's restaurant who slipped and fell on her way to the restroom. She testified that she believed "she slipped on 'something.'" 600 N.E.2d at 153. Evidence indicated a water glass was found on the floor near where she fell. The issue, as a matter of premises liability, was "whether Shapiro's acted unreasonably in allowing the foreign substance to remain on the floor." *Id.* Because evidence also showed that spills frequently occurred at the restaurant, which conducted a high volume of business, and certain staff had been assigned to and were responsible for cleaning up those spills, we found a genuine issue of material fact as to whether Shapiro's acted unreasonably in allowing the substance to remain. *Id.* at 154.

■ As Red Ribbon points out,
the most critical distinction is that the alleged defect in *Barsz* was open and obvious, a foreign substance on the floor, and the restaurant had recognized the potential danger of spills and employed people to clean them up. In this case, the defect was hidden, and Howerton made no attempt to prove how Red Ribbon was to discover it.

Red Ribbon's Brief at 11. The unit was installed in the wall, and Red Ribbon had no means of inspecting the back of the unit. No evidence was adduced of any reports of a problem with any unit at Red Ribbon. How-

erton himself indicated that the bar supported his weight and did not move as he initially pulled himself up. No substantial evidence or reasonable inference could be drawn from the Howertons' evidence to support their rhetorical claims that proper inspection would have "discovered the defect." Howertons' Brief at 16. *See First Bank of Whiting.* Therefore, judgment on the evidence in favor of Red Ribbon was not erroneous.

■ The Howertons appear to be asserting the same argument against judgment on the evidence for Super 8 as for Red Ribbon. They further argue as to Super 8 that it had the necessary control as a franchisor to warrant the attachment of liability, citing *Helmchen v. White Hen Pantry, Inc.*, 685 N.E.2d 180 (Ind.Ct.App.1997), *trans. denied.* However, even if we accepted the Howertons' assertion of Super 8's "control" by virtue of its right to approve the plans for the motel, our resolution of the foregoing as to any premises liability with respect to Red Ribbon precludes liability with respect to Super 8. And the Howertons make no assertion that based simply upon Super 8's right to approve the plans for the motel, substantial evidence or a reasonable inference to be drawn from their evidence indicates the defect in the unit would have been discovered. *See First Bank of Whiting.* We find no error here.

We affirm.

SHARPNACK, C.J., and ROBB, J., concur.