**Frank CERGNUL, Appellant–Plaintiff,**

v.

**HERITAGE INN OF INDIANA, INC., Appellee–Defendant.**

No. 53A01–0206–CV–213.

Court of Appeals of Indiana.

March 24, 2003.

Daniel G. McNamara, David E. Bailey, Rothberg Logan & Warsco, LLP, Fort Wayne, IN, Attorneys for Appellant.

Richard K. Shoultz, Lewis & Wagner, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff Frank Cergnul appeals the judgment entered in favor of the appellee-defendant Heritage Inn of Indiana, Inc. (Heritage Inn) with regard to his cause of action against it for negligence and premises liability. Specifically, Cergnul argues that the trial court erroneously granted Heritage Inn's motion for a judgment on the evidence because the doctrine of res ipsa loquitur applied and enough evidence was presented to permit the case to proceed to the jury. Concluding that res ipsa loquitur does not apply in these circumstances and that Cergnul failed to present any evidence of Heritage Inn's negligence to support his claim, we affirm the trial court's grant of a directed verdict in Heritage Inn's favor.

## FACTS

Heritage Inn owned and operated a Super 8 hotel in Bloomington. In September 1995, certain renovations at the hotel were performed where the railings in the stair-

way were removed and reattached to the wall following the replacement of wallpaper.

On February 16, 1996, Cergnul rented a room at the Super 8 and had used the hotel stairway on at least two occasions without incident. Later that day, however, Cergnul again began to ascend the hotel stairway. As he climbed the stairs, Cergnul grabbed the bottom of the railing and thought it appeared to be secure. However, on this occasion, the stair railing came out of the wall and Cergnul fell. As a result of the incident, Cergnul was injured. Cergnul noticed that the top portion of the railing had come out of the wall while the bottom remained attached. He also observed a large screw and some drywall dust near the railing.

On February 13, 1998, Cergnul filed a premises liability action against Heritage Inn, alleging that the hotel should be held liable for his injuries because it had negligently installed and maintained the handrail. A jury trial commenced on April 30, 2002, and Cergnul called Dorothy Duhr, the general manager of the hotel, to testify. Duhr acknowledged that while she never physically inspected the hand railings, she would often use them as a steadying device when climbing the stairs. Duhr stated that she never encountered an instance where the railings appeared to be loose. She also testified that no one, including the hotel's cleaning staff and other guests, ever reported a problem where the handrails might have required attention or maintenance.

After Cergnul presented his case-in-chief, Heritage Inn moved for a judgment on the evidence, claiming that Cergnul did not produce sufficient evidence on the issue of negligence to permit the case to go to the jury. In opposition, Cergnul argued that the doctrine of res ipsa loquitur applied and the jury was warranted in inferring negligence on the part of Heritage Inn. Alternatively, Cergnul argued that he presented enough evidence of negligence so as to allow the case to proceed. In the end, the trial court granted Heritage Inn's motion and Cergnul now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ In resolving the issues that Cergnul presents, we note that a motion for a judgment on the evidence should be granted only when an issue in the case or an essential element of the claim is not supported by sufficient evidence. *Wellington Green Homeowners' Ass'n v. Parsons*, 768 N.E.2d 923, 925–26 (Ind.Ct.App.2002), *trans. denied.* We look only to the evidence and reasonable inferences therefrom most favorable to the non-moving party. *Id.* If there is any probative evidence or reasonable inference to be drawn therefrom or if there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Id.* at 926.

### II. Cergnul's Claims

#### A. Applicability of Res Ipsa Loquitur

■ Cergnul claims that the trial court erred in refusing to apply the doctrine of res ipsa loquitur to the circumstances here. Specifically, Cergnul maintains that the elements of that doctrine were proven during his case-in-chief and, therefore, the grant of Heritage Inn's motion for judgment on the evidence was error.

■ Res ipsa loquitur literally means "the thing speaks for itself." *Shull v. B.F. Goodrich Co.*, 477 N.E.2d 924, 926 (Ind.Ct. App.1985), *trans. denied.* In certain circumstances, this doctrine will permit the inference of negligence. *K–Mart Corp. v. Gipson*, 563 N.E.2d 667, 669 (Ind.Ct.App.

1990), *trans. denied.* Specifically, res ipsa loquitur permits an assumption that in some situations an occurrence is so unusual that, absent a reasonable justification or explanation, those persons in control of the situation should be held responsible. *Shull,* 477 N.E.2d at 926. Before the doctrine will apply, the plaintiff must present evidence that (1) the injuring instrumentality is under the exclusive control of the defendant, and (2) the accident is one which in the ordinary course of things does not happen if those who control the instrumentality use proper care. *Id.* at 927. If facts are introduced to support these elements, a permissive inference of negligence will exist. *Deming Hotel Co. v. Prox,* 142 Ind.App. 603, 236 N.E.2d 613, 620 (Ind.Ct.App.1968). By the same token, negligence may not be inferred from the simple fact that an injury occurred. *See K–Mart,* 563 N.E.2d at 669.

In cases involving premises liability, our supreme court has determined that a landowner owes an invitee[1] "a duty to exercise reasonable care for his protection while he is on the landowner's premises." *Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind.1991). It has also been established that the landowner is not absolutely liable for, or an insurer of, the invitee's safety. *Hopper v. Colonial Motel Props., Inc.,* 762 N.E.2d 181, 189 (Ind.Ct.App.2002), *trans. denied.* Specifically, in *Burrell,* the *Restatement (Second) of Torts* § 343 (1965) was adopted to define the duty to an invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell,* 569 N.E.2d at 639–40.

In the instant case, Cergnul places great emphasis upon this court's holding in *K–Mart v. Gipson* for the proposition that res ipsa loquitur should apply here because the railing was under the exclusive control of Heritage Inn, notwithstanding the Super 8 manager's testimony that an independent contractor had attached the railing when the interior of the hotel was renovated. In *K–Mart,* the defendant-department store installed a rack made of heavy metal wire, affixed with wire hooks, that stood approximately seven feet off the ground that held wind chimes. *Id.* at 670. As Gipson, a prospective customer, approached the rack and touched the chimes, the fixture fell and "knocked her off her feet." *Id.* As a result, Gipson sued K–Mart for the injuries she sustained, alleging that the store should be responsible under res ipsa loquitur. The jury entered a verdict in Gipson's favor and the store appealed alleging that insufficient evidence was presented to permit the case to go to the jury. *Id.* at 668–69. K–Mart argued that Gipson failed to show that it was in exclusive control of the rack at the time of the accident. *Id.* at 671. On appeal, however, this court observed that Gipson presented evidence that the rack had been installed by K–Mart—a fact that was necessary to establish exclusive control. Specifically, we observed that:

> The rack was installed by a K–Mart employee and there was no evidence presented that a third party may have tampered with the rack. It is reasonable to infer that negligence for a falling

**1.** The parties do not dispute that Cergnul was an invitee on Heritage Inn's property.

instrumentality is attributable to that party who was responsible for installing and maintaining the instrumentality. K–Mart was the party who was responsible for installing and maintaining the rack, and the jury could reasonably infer that it was negligent in the rack's fall. *Id.* at 670–71. We also agreed with Gipson's contention that "display racks do not ordinarily fall in the absence of someone's negligence." *Id.* at 670.

Here, even though it may fairly be said that Heritage Inn was in the exclusive possession of the railing after the contractor had installed it, it is axiomatic that stair railings can become loose and fall through no negligence on the part of a landowner. For instance, a screw behind the wall could have fractured or another guest could have vandalized the railing just before Cergnul used it. Moreover, the evidence showed that neither the Super 8's manager nor any of the hotel employees experienced any difficulties with the railing prior to Cergnul's fall. Even Cergnul did not encounter a problem before the railing came off the wall. Appellee's App. p. 23, 25. Thus, Cergnul takes a broad leap in speculation to suggest that merely because the handrail became detached from the wall, it did so only because of Heritage Inn's negligence. The evidence points to the contrary, inasmuch as Cergnul failed to prove the cause of the damage to the railing and it has not been demonstrated how Heritage Inn may have been negligent in producing the fall.

The circumstances in *K–Mart* are markedly different from those presented here. Unlike the situation in *K–Mart* where a display rack crashed to the floor and it was shown that the agents of the store had installed the device and were responsible for maintaining it, we will not infer negligence on the part of Heritage Inn for the broken stair railing in these circumstances.

To be sure, Heritage Inn was not an insurer of Cergnul's safety and there was no evidence demonstrating that the hotel was alerted to any potential problem with the railing prior to Cergnul's fall. Thus, we cannot say that Cergnul's accident was "one which in the ordinary course of things does not happen if those who control the instrumentality use proper care." *See Shull,* 477 N.E.2d at 927. As a result, Cergnul failed to satisfy the requirements of the res ipsa loquitur doctrine, and the trial court properly entered a judgment on the evidence for Heritage Inn.

### B.  Probability of Negligence

■  In a closely related argument, Cergnul goes on to assert that even if the *res ipsa loquitur* doctrine does not apply, specific and sufficient evidence of negligence was offered at trial that would warrant the case to be submitted to the jury. In essence, Cergnul contends that the evidence was sufficient to support the conclusion that Heritage Inn negligently failed to discover and correct the improper attachment of the railing prior to Cergnul's fall. Appellant's Br. p. 13.

In addressing this claim, we turn to this court's opinion in *Wellington Green Homeowners' Ass'n v. Parsons,* 768 N.E.2d 923 (Ind.Ct.App.2002), for guidance. In *Wellington Green,* Parsons, a mail carrier, was delivering mail to residents at a condominium complex. This complex used a "multibox" mailbox where a central location was placed for use by the individual condominium owners. *Id.* at 924. Screws had been placed in the drywall to secure the mailbox, rather than in the studs. *Id.* at 925.

On one occasion, Parsons used his key and attempted to "jiggle" the mailbox open. At some point, the box came out of the wall and caused Parsons to lose his balance and sustain an injury. *Id.* at 924– 25. As a result, Parsons sued the manage-

ment company and owners of the condominium property.

During the trial, it was established that neither the management company nor the property owner had knowledge of any problems with the mailbox. The maintenance technician for the management company testified that he did not check the mailboxes to make sure they were "securely attached to the wall." *Id.* at 927. He also testified that he could not see behind the mailboxes because only the postal service possessed a key to open the boxes that would permit their removal from the wall. *Id.* at 927–28. Furthermore, the maintenance technician acknowledged that the management company had not received reports of any problems with the mailboxes by any of its residents. *Id.* at 927. After Parsons presented his case-in-chief, the management company and owners moved for a judgment on the evidence that was subsequently denied by the trial court. Following a jury verdict entered in Parson's favor, the management company and owners appealed.

We reversed the trial court and concluded that the management company was entitled to a judgment on the evidence. *Id.* at 929. In so doing, we observed that Parsons completely failed to prove that the appellants possessed either actual or constructive knowledge of any problems with the mailbox. Specifically, we noted that:

> The [landowners] were hindered in their ability to inspect the multi-box mailboxes. Granted, [the maintenance technician] stated that he could have jiggled the multi-box mailboxes to see if they were securely attached to the wall. However, there was never a reason to do so, as there was no evidence of any complaints made by tenants of [the condominium complex], or by another mail carrier, regarding the multi-box mail-

boxes. Moreover, there was no evidence that the [landowners] installed the multi-box mailboxes. Thus, there was no evidence that the [landowners] were aware of how the multi-box mailboxes were attached to the wall, i.e. whether the screws were attached to the studs or to the drywall.

*Id.* at 928.

Here, Cergnul acknowledged that he did not look into the hole in the wall in order to determine how the screw had been attached. Additionally, like the circumstances in *Wellington Green,* the manager of the Super 8 did not conduct any type of inspection where she physically "shook" or "jiggled" the railing to see whether it was loose. Appellee's App. p. 36. She used the railing and had no reason to believe that it may have been loose. Appellee's App. p. 35–37. As set forth above, no complaints were ever received indicating that the railing might have been damaged.

Additionally, Cergnul acknowledged that his wife and daughters also used the stairs and did not experience any problems with the railing. Appellee's App. p. 23–24. Only seconds before the fall, Cergnul grabbed the lower portion of the railing and it felt secure. Appellee's App. p. 29. Thus, it is apparent that Cergnul was not aware of any problem with the railing immediately before it came out of the wall. Even so, Cergnul argues that the jury could have concluded that Heritage Inn was negligent because the railing was anchored in drywall instead of wall studs. Appellant's Br. p. 12. However, no evidence was presented that Heritage Inn possessed either actual or constructive knowledge that there may have been a problem with the railing. Thus, no issue was preserved for the jury's consideration with respect to Cergnul's claim.

## CONCLUSION

In conclusion, the trial court properly granted Heritage Inn's motion for judgment on the evidence because the doctrine of res ipsa loquitur does not apply in these circumstances. Heritage Inn's motion was also properly granted because Cergnul failed to present any evidence establishing that Heritage Inn had, or should have had, any knowledge that the stair railing was improperly attached to the wall.

Judgment affirmed.

RILEY and MATHIAS, JJ., concur.