Kera L. RECTOR, Appellant–Plaintiff,

v.

Joe OLIVER, Judy Kadinger and Any Other Unknown Individual d/b/a Joe's Video, Appellees–Defendants.

No. 18A02–0309–CV–807.

Court of Appeals of Indiana.

June 10, 2004.

Ralph E. Dowling, Norris Choplin & Schroeder LLP, Indianapolis, IN, Attorney for Appellant.

Donald K. McClellan, McClellan, McClellan & Arnold, Muncie, IN, Attorney for Appellee Judy Kadinger d/b/a Joe's Video.

## OPINION

SULLIVAN, Judge.

Appellant–Plaintiff, Kera L. Rector, challenges the trial court's grant of summary judgment in favor of Appellee–Defendant Judy Kadinger d/b/a Joe's Video ("Kadinger").

We reverse and remand.

The basic facts necessary for our decision are undisputed. On February 12, 2000, Rector entered Joe's Video, owned by Kadinger, and was struck on the head and shoulder by a light fixture which fell from the ceiling of the store. Thereafter, on January 30, 2002, Rector filed a complaint against Kadinger.[1] Count I of the

---

1. Joe Oliver and "any other unknown individual d/b/a Joe's Video," were also named as defendants in the complaint. According to the chronological case summary, Oliver failed to file an appearance, and on September 23, 2002, default judgment was entered against Oliver. Oliver was not a party to the motion

complaint alleged that the defendants were negligent for failing to maintain the video store in a reasonably safe condition and for failing to discover a dangerous condition. Count II, titled "Doctrine of *Res Ipsa Loquitur*," alleged that the light fixture was in the exclusive control of the defendants and subject to their use and inspection, that Rector did nothing to cause the light fixture to fall, and that "[i]n [the] ordinary experience of mankind, the light fixture would not have fallen from the ceiling except for the negligence of Defendants or that of others for whose negligence they are legally responsible." Appendix at 8. Kadinger filed an answer to the complaint on March 14, 2002.

On May 22, 2003, Kadinger filed a motion for summary judgment, along with a memorandum in support thereof. In support of her motion, Kadinger designated evidence establishing that when she and her husband purchased the video store, the light fixture which fell was already in place; that neither she nor her husband had any part in installing the light fixture; that they never replaced or altered the fixture; that, although they periodically cleaned the light fixture and replaced light bulbs, no maintenance work was ever done on the fixture itself; that the fixture had never appeared to be loose; and that no one indicated to them that there was a problem with the fixture or that it might be loose and require maintenance. Also, Kadinger and her husband "would have made routine cleaning and maintenance inspections of the property" before the accident. App. at 18.

On June 23, 2003, Rector responded to this motion by filing a memorandum in opposition to Kadinger's motion for summary judgment. Following a summary judgment hearing held on August 14, 2003,

for summary judgment being appealed and

the trial court entered summary judgment in favor of Kadinger on August 20, 2003.

Upon appeal, the sole issue for our review is the propriety of the trial court's grant of summary judgment in favor of Kadinger. In such cases, our standard of review is well settled. When reviewing a grant or denial of a motion for summary judgment, we stand in the shoes of the trial court. *Cox v. Town of Rome City*, 764 N.E.2d 242, 245 (Ind.Ct.App.2002), *reh'g denied.* Summary judgment is appropriate where the designated evidentiary matter shows that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Cox*, 764 N.E.2d at 245. Once the moving party demonstrates, prima facie, that there are no genuine issues of material fact as to any determinative issue, the non-moving party must come forward with contrary evidence. *Cox*, 764 N.E.2d at 246. Upon appeal, we do not weigh the evidence, but rather we consider the facts in the light most favorable to the non-moving party. *Id.* We may sustain the judgment upon any theory supported by the designated evidence. *Id.*

■ The resolution of the issue before us depends upon whether the doctrine of *res ipsa loquitur* is applicable to the facts in the present case. The doctrine literally means "the thing speaks for itself." *Shull v. B.F. Goodrich Co.*, 477 N.E.2d 924, 926 (Ind.Ct.App.1985), *trans. denied.* *Res ipsa loquitur* is a rule of evidence which permits an inference of negligence to be drawn based upon the surrounding facts and circumstances of the injury. *K–Mart Corp. v. Gipson*, 563 N.E.2d 667, 669 (Ind.Ct.App.1990), *trans. denied.* The doctrine operates on the premise that negligence, like any other

has not filed an appearance in this appeal.

fact or condition, may be proved by circumstantial evidence. *Id.* To create an inference of negligence, the plaintiff must establish: (1) that the injuring instrumentality was within the exclusive management and control of the defendant or its servants, and (2) that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. *Id.* In determining if the doctrine is applicable, the question is whether the incident more probably resulted from defendant's negligence as opposed to another cause. *Id.* A plaintiff may rely upon common sense and experience or expert testimony to prove that the incident more probably resulted from negligence. *Vogler v. Dominguez,* 624 N.E.2d 56, 61 (Ind.Ct.App.1993), *trans denied.* To invoke *res ipsa loquitur,* the plaintiff must demonstrate that the defendant had exclusive control of the injuring instrumentality at the time of injury. *Aldana v. Sch. City of E. Chicago,* 769 N.E.2d 1201, 1207 (Ind.Ct.App.2002), *trans. denied.* Exclusive control is an expansive concept which focuses upon who has the right or power of control and the opportunity to exercise it. *Shull,* 477 N.E.2d at 933. The existence of multiple defendants or the possibility of multiple causes does not automatically defeat the application of *res ipsa loquitur. Vogler,* 624 N.E.2d at 62.

■ In support of her argument that the doctrine of *res ipsa loquitur* should not apply, Kadinger relies mainly upon the case of *Cergnul v. Heritage Inn of Ind., Inc.,* 785 N.E.2d 328 (Ind.Ct.App.2003), *trans. denied.* In that case, the plaintiff had rented a room at a hotel operated by the defendant. The railings in the hotel's stairway had been removed and re-attached following the replacement of wallpaper. Although the plaintiff had used the stairway on at least two occasions without incident, the railing later came out of the wall as the plaintiff was climbing the stairs. This caused the plaintiff to fall and be injured. The plaintiff sued the hotel, and the trial court granted the defendant's motion for judgment on the evidence.

Upon appeal, a panel of this court affirmed the trial court and held that the doctrine of *res ipsa loquitur* did not apply. Distinguishing the case before it from that in *Gipson, supra,* the *Cergnul* court observed that the railing was re-attached by an independent contractor, not the hotel's owner. The *Cergnul* court, in referring to the *Gipson* case, stated, "Gipson presented evidence that the rack [which fell on the plaintiff] had been installed by K–Mart—a fact necessary to establish exclusive control." 785 N.E.2d at 331. The court then wrote:

"Here, even though it may fairly be said that Heritage Inn was in the exclusive possession of the railing after the contractor had installed it, it is axiomatic that stair railings can become loose and fall through no negligence on the part of a landowner. For instance, a screw behind the wall could have fractured or another guest could have vandalized the railing just before Cergnul used it. Moreover, the evidence showed that neither the Super 8's manager nor any of the hotel employees experienced any difficulties with the railing prior to Cergnul's fall. Even Cergnul did not encounter a problem before the railing came off the wall. Thus, Cergnul takes a broad leap in speculation to suggest that merely because the handrail became detached from the wall, it did so only because of Heritage Inn's negligence. The evidence points to the contrary, inasmuch as Cergnul failed to prove the cause of the damage to the railing and it has not been demonstrated how Heritage Inn may have been negligent in producing the fall." *Id.* at 332.

In the *Gipson* case mentioned in the *Cergnul* opinion, the plaintiff was injured at the defendant's store when a display rack made of metal wire and containing wind chimes fell on her. Upon appeal from the jury's verdict in favor of the plaintiff, the court held that the doctrine of *res ipsa loquitur* applied because "[a]s a matter of common sense and experience, display racks do not ordinarily fall for no apparent reason on customers in stores." 563 N.E.2d at 670. The *Gipson* court did note that the rack was installed by a K–Mart employee and that there was no evidence that the rack had been tampered with by a third party, writing, "K–Mart was the party who was responsible for installing and maintaining the rack, and the jury could reasonably infer that it was negligent in the rack's fall." *Id.* at 671. In response to the defendant's claim that Gipson had failed to establish that K–Mart had exclusive control over the display rack because Gipson had not eliminated other causes for the rack's fall, the court noted that, under the doctrine of *res ipsa loquitur*, it is not necessary to prove that the only cause of the accident was the defendant's negligence. *Id.* (quoting *Merriman v. Kraft*, 253 Ind. 58, 249 N.E.2d 485 (1969)). While the other possible causes asserted by K–Mart may have been legitimate inferences to draw from the evidence, they did not prevent the application of the *res ipsa loquitur* doctrine. *Id.*

In the case before us, Kadinger argues that, like the defendant hotel owner in *Cergnul,* the designated evidence indicates that she did not install the light fixture which fell upon Rector, and that therefore the doctrine of *res ipsa loquitur* does not apply. To be sure, there is language in the *Cergnul* opinion which supports Kadinger's position that, absent her having installed the light fixture which fell upon Rector, the *res ipsa loquitur* doctrine will not apply. We, however, are not convinced that installation is required before a plaintiff may avail herself of the doctrine. As stated, for the *res ipsa loquitur* doctrine to apply, the plaintiff must establish that the injuring instrumentality was within the exclusive management and control of the defendant or its servants and that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care.

■ The *Cergnul* decision stated that even if the defendant hotel had exclusive management and control of the railing after the contractor had re-attached it, that it was "axiomatic that stair railings can become loose and fall through no negligence on the part of the landowner." 785 N.E.2d at 332. Whether or not stair railings might become loose through no negligence on the part of the landowner, it is not necessary for a plaintiff to exclude every other possibility other than the defendant's negligence as a cause. *See Gipson,* 563 N.E.2d at 671; *Sharp v. LaBrec, Inc.,* 642 N.E.2d 990, 993 (Ind.Ct.App. 1994), *trans. denied.* Nor is it required that the plaintiff present direct evidence of the cause of the accident, for this, as stated by the *Gipson* court, begs the question. The doctrine of *res ipsa loquitur* is designed to allow an inference of negligence to be drawn when direct evidence is lacking. *Gipson,* 563 N.E.2d at 671. This also does not mean that the plaintiff wins by default, for the doctrine of *res ipsa loquitur* simply allows an inference of negligence which may or may not be drawn by the trier of fact. *See Deming Hotel Co. v. Prox,* 142 Ind.App. 603, 236 N.E.2d 613 (1968) (the doctrine of *res ipsa loquitur* raises a permissive inference of negligence and the weight to be given this inference and the other evidence is solely for those determining the facts), *trans. denied.*

In further support of our position that the doctrine of *res ipsa loquitur* does not require that the injuring instrumentality have been installed by the defendant, we observe that the exclusive control requirement of the *res ipsa loquitur* doctrine requires that the plaintiff demonstrate that the defendant had exclusive control over the instrumentality *at the time* of the alleged negligent act. *See Aldana,* 769 N.E.2d at 1207. Here, the negligent act could have been the installation of the light fixture, but the jury could also reasonably infer that the negligence was the failure to reasonably inspect and maintain the premises. Regardless of who installed the light fixture, we cannot say that a light fixture falling from the ceiling of a business is the sort of event which ordinarily happens if those who have the management and control exercise proper care.

The result was similar in *Prox, supra,* wherein the plaintiff was an invitee upon the defendant hotel's property. While in a dining room located at the hotel, the plaintiff was struck by a large plate-glass mirror which fell from a pillar. The plaintiff brought suit against the hotel, the general contractor who had renovated the dining room, and the sub-contractor who had installed the mirror. Following a successful demurrer, the hotel remained as the only defendant in the amended complaint. Upon appeal, the hotel claimed error in the overruling of its motion to make more specific and demurrer to the amended complaint, and the jury verdict against it. With regard to the demurrer, the Appellate Court held that the complaint alleged specific facts and the evidence adduced at trial showed sufficient facts to make the rule of *res ipsa loquitur* applicable. 142 Ind.App. at 610–11, 236 N.E.2d at 618. With regard to the jury verdict, the court wrote:

> "we cannot say as a matter of law that the verdict of the jury is not sustained by sufficient evidence or is contrary to law.

In reviewing the evidence in the record, we note that the Appellee was a paying guest in the restaurant of the Appellant. During the course of her stay as such guest, a mirror, approximately 3 and 1/2 feet wide and 7 feet from top to bottom, fell off the wall and injuries were suffered by her as a result thereof. The plaintiff alleged in paragraph number 4 of her complaint:

> '4. The defendant, Deming Hotel Company, has at all times mentioned herein been in complete and exclusive control of the dining room in which plaintiff was injured including both the building and the fixtures. Said defendant was negligent in failing to provide a safe place for its dining room patrons, including the plaintiff herein.'

* * *

This Court, in the case of *Rust, et al. v. Watson* (1966) [141 Ind.App. 59, 8 Ind. Dec. 21, ]215 N.E.2d 42, was confronted with a similar situation. The court in that case held that the doctrine of *res ipsa loquitur* applied where a chandelier fell on a business invitee and the plaintiff's complaint averred: '... the defendant's failure to provide a safe place for their paying guests....'

* * *

The landmark case which established the doctrine of res ipsa loquitur was *Byrne v. Boadle* (1863) 2 H & C 722, 159 Eng. Reprint 299. The plaintiff in that case was struck by a flour barrel which fell from a window above the street. The court held that the plaintiff had established a prima facie case because barrels do not ordinarily fall out of win-

dows unless someone is negligent. In the instant case, the trial jury must have reasoned the same way; that mirrors do not ordinarily fall off walls unless someone is negligent.

A summary of the evidence in the record shows that the Plaintiff was a paying guest in the Gourmet Room of the Deming Hotel; that the Defendant had the control and management of the said Gourmet Room; that a mirror fell from a pillar in said Gourmet Room, struck and injured the plaintiff.

As in all cases tried by a jury, the weight of the evidence and the credibility of the witnesses were for the jury to determine. It appears in this case the jury believed that the falling of a mirror from a wall is an event which ordinarily does not occur unless someone is negligent; that the event would not have occurred if proper care had been exercised by the defendant; that the defendant owed a duty to the plaintiff to provide a safe place for its dining room patrons and the plaintiff in particular, and that this duty was breached when the mirror fell off the wall, struck and injured the plaintiff." 142 Ind.App. at 611–14, 236 N.E.2d at 618–20.

Thus, in *Prox*, it apparently did not matter that the injuring instrumentality had been installed by another party. The dispositive facts were that the defendant had exclusive management and control over the mirror and that the jury could reasonably conclude that mirrors do not ordinarily fall off walls unless the defendant was negligent. Similarly, here a jury could reasonably determine that light fixtures do not fall from the ceiling absent the negligence of the landowner.

 Kadinger also argues that, because she did not install the light which fell upon Rector, and because she did not know that the light was in any condition to fall, she therefore breached no duty of care owed to Rector as an invitee upon her property. This argument relies upon Indiana cases involving premises liability. In Indiana, a premises owner owes the highest duty to an invitee—a duty to exercise reasonable care for his protection while he is on the owner's premises. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991). In *Burrell*, our Supreme Court adopted the following language defining the duty owed an invitee by the premises owner:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." *Id.* at 639–40 (quoting Restatement (Second) of Torts § 343 (1965)).

Kadinger contends that the designated evidence reveals that she did not know that the light had come loose, nor was there any indication that she should have suspected such. Although the evidence might indicate that Kadinger did not know that the light had become loose or might fall, it does not answer the question of whether, in the exercise of reasonable care, she could have discovered the condition. Kadinger's duty was to exercise reasonable care under the circumstances, which includes the duty to reasonably inspect and maintain the premises. Whether the failure to discover the condition of the light fixture and/or remedy such was a breach of this duty is a question for the

trier of fact to determine. This is not inconsistent with the Restatement (Second) provision that a premises owner is liable for conditions which she knows or in the exercise of reasonable care would have discovered. We are unwilling to say as a matter of law that, with the exercise of reasonable care, Kadinger could not have discovered the defect in the light fixture.

In this matter, we reach a somewhat different conclusion than was reached in *Wellington Green Homeowners' Ass'n v. Parsons*, 768 N.E.2d 923 (Ind.Ct.App. 2002), *trans. denied*, and *Howerton v. Red Ribbon Inc.*, 715 N.E.2d 963 (Ind.Ct.App. 1999), *trans. denied*. In the former case, the plaintiff was a mailman who was injured when a multi-unit mailbox fell after he attempted to open the mailbox with his key. The evidence indicated that the mailbox had been attached by screws placed in the plasterboard, not the wall studs. Upon appeal, the *Parsons* court held that the trial court had erred in denying the defendants' motion for judgment on the evidence, stating:

> "With regard to the condition of the property, a landowners' duty of care to an invitee is a known or should have known standard. *See Burrell*, 569 N.E.2d at 640. In the present case, there was no evidence that the Appellants knew or should have known about the defect that allegedly caused Parsons' injuries. Further, there was no evidence that, even if Bailey [the defendants' maintenance technician] had jiggled the multi-box mailbox, he would have discovered the defect." 768 N.E.2d at 929.

The court then concluded that the plaintiff had failed to establish the duty element of his negligence claim in that there was no evidence that the defendants knew, or by the exercise of reasonable care would have

discovered, the condition that the plaintiff alleged caused his injuries. *Id.*

In *Howerton*, relied upon by the *Parsons* court, the plaintiff sued the defendant hotel after he fell and injured his knee when the bar he used to lift himself out of a bathtub came out of the wall. Upon appeal from the trial court's grant of defendant's motion for judgment on the evidence, the *Howerton* court held that, because the bar had been installed in the wall, the hotel had no means of inspecting the back of the unit. 715 N.E.2d at 968. The court wrote:

> "No evidence was adduced of any reports of a problem with any unit at [defendant's hotel]. Howerton himself indicated that the bar supported his weight and did not move as he initially pulled himself up. No substantial evidence or reasonable inference could be drawn from the Howertons' evidence to support their rhetorical claims that proper inspection would have 'discovered the defect.'" *Id.*

■ In her reply brief, Rector notes that the *Parsons* case, and by implication the *Howerton* case, did not involve *res ipsa loquitur*, and therefore Rector claims that these cases have no bearing upon the issues in this appeal. We do not entirely agree. In both cases, the issue was premises liability. Here, although the immediate issue before us is one of the applicability of the *res ipsa loquitur* doctrine, the two concepts are not entirely unrelated. *See* 62 Am.Jur.2d *Premises Liability* §§ 57–67 (1990) (discussing applicability of *res ipsa loquitur* doctrine). Indeed, it is not hard to imagine that if a plaintiff is injured by an instrumentality in the exclusive control and management of the defendant, that the plaintiff might often be on the premises of the defendant. In other words, premises liability and *res ipsa loquitur* are not two entirely different

beasts. The doctrine of *res ipsa loquitur* is not a separate cause of action, but is instead a rule of evidence whereby under certain circumstances, negligence may be inferred. *Cf. Gipson,* 563 N.E.2d at 669. Premises liability is also a concept related to negligence law. *See Parsons,* 768 N.E.2d at 925–26 (using premises liability standard of duty in negligence claim); 62 AM.JUR.2D *Premises Liability* § 1 (1990) (stating that, historically, the liability of a possessor of land to one injured thereon was treated as a branch of tort law, or more specifically, in the context of negligence).

Furthermore, the position adopted from the Restatement (Second) of Torts in *Burrell, supra,* states that a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, the conditions listed therein are met. To say that a premises owner may be liable under the doctrine of *res ipsa loquitur* when they could not be liable under the premises liability standard would seem to fly in the face of the standard adopted in *Burrell.* 569 N.E.2d at 639–40.

This is not to say, however, that we believe that Rector's claim may not go forward. In *Parsons,* the defendants were hindered in their ability to inspect the mailbox which fell. 768 N.E.2d at 928. Similarly, in *Howerton,* the defendant had "no means of inspecting the back of the unit." [2] Thus, the duty involved in these cases related to the duty to maintain and inspect one's premises, and the respective defendants could not have discovered the defects by reasonable inspection and maintenance. Here, viewing the designated evidence in the light most favorable to Rector, we cannot say as a matter of law that

the defect in the light would not have been discovered by reasonable maintenance and inspection. We find support for our position in an illustration given in the Restatement (Second) of Torts:

> "A goes to bed at night as a guest in B's hotel in a city in California. During the night he is injured by the fall of a large piece of plaster from the ceiling. In the absence of other evidence there are various possible explanations, including activities of persons upstairs or previous guests, jolts from explosions or other sources outside of the hotel, *concealed defects not discoverable by reasonable inspection,* or an earthquake. *It may, however, reasonably be inferred that the most probable explanation is the negligence of B in permitting the plaster to become defective."* *Id.* at § 328D, cmt. e, illus. 4 (1965) (emphasis supplied).

The same is true here. It may well be that there was a concealed defect in the manner in which the light fixture which fell was installed. However, a jury may still reasonably infer that the most probable cause was Kadinger's negligence in permitting the light to become defective.

Another illustration from the Restatement contrasts with the one given above:

> "A, a customer in B's restaurant, orders and eats a piece of blueberry pie. He is injured by a small blue tack, of a size and shape which would permit it to become imbedded and concealed in a blueberry, and to escape the most careful scrutiny. In may not be inferred, without other evidence, that the presence of the tack in the pie was due to the negligence of B." *Id.* at § 328D, cmt. e, illus. 2 (1965).

---

**2.** The *Cergnul* opinion could also be viewed as a case in which the court determined that, even had the owner reasonably inspected and

maintained the stairway railing, the defect could not have been discovered.

In the case at bar, the falling light fixture is more akin to a falling piece of plaster than an undiscoverable tack inside a blueberry. Again, we are not prepared to say as a matter of law that the defective condition of the light fixture was undiscoverable by reasonable inspection and maintenance.[3]

The judgment of the trial court is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

ROBB, J., and HOFFMAN, Sr.J., concur.

---

**3.** We would also note that Kadinger's position that she cannot be held liable because the former landowner may have installed the light could lead to an inequitable result in some cases. If the current landowner could thus escape liability, the injured plaintiff might have no recovery, for the general rule is that, absent misrepresentation on the part of the former owner, the former owner will not be liable. *See Mishler v. State*, 730 N.E.2d 229, 231 (Ind.Ct.App.2000) ("[w]hen a new owner assumes control and possession, he becomes responsible for the safety of structures erected by his predecessor, absent misrepresentation by the predecessor.").