# FOR PUBLICATION



FILED

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MELISSA A. DAVIDSON**
Charles D. Hankey Law Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE/GEPA:

**THOMAS C. HAYS**
**VALERIE L. HUGHS**
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE/SCHINDLER:

**BENJAMIN D. ICE**
**WILLIAM A. RAMSEY**
Murphy Ice & Koeneman LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CECILIA KELLY, | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | )    No.  49A04-1210-CT-509 |
| | ) |
| GEPA HOTEL OWNER INDIANAPOLIS | ) |
| LLC, GEPA HOTEL OPERATOR | ) |
| INDIANAPOLIS LLC, AND SCHINDLER | ) |
| ELEVATOR CORPORATION, | ) |
| | ) |
| Appellees-Petitioners. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Thomas J. Carroll, Judge
Cause No. 49D06-1001-CT-2415

**July 11, 2013**

**MEMORANDUM DECISION - FOR PUBLICATION**

**PYLE, Judge**

<u>STATEMENT OF THE CASE</u>

Cecilia Kelly ("Kelly") appeals the trial court's grant of summary judgment in favor of GEPA Hotel Owner Indianapolis, LLC, GEPA Hotel Operator, LLC (collectively "GEPA"), and Schindler Elevator Corporation ("Schindler").

We reverse.

<u>ISSUE</u>

Whether the trial court erred in granting summary judgment in favor of GEPA and Schindler.

<u>FACTS</u>

On February 29, 2008, Kelly, Barbara Williams ("Williams"), and Greta Harrison ("Harrison") attended a church function at a Hilton Hotel in Indianapolis. After the event ended, the women, escorted by Henry Perry ("Perry"), went to the nineteenth (19th) floor to visit the speaker for the evening. Once the elevator arrived at the 19th floor, everyone began to exit. As Kelly exited, the elevator moved and the heel of her shoe became caught in the gap between the elevator and the floor, causing her to stumble; her foot came out of her shoe. Kelly injured her knee because of the incident. Williams was already off the elevator and did not see it move. Williams did hear sounds come from Kelly and what Williams thought was the elevator. Harrison said that she heard the

elevator "jar" and saw Kelly fall. (Appellant's App. 88). Perry felt the elevator move and had to pull Kelly's shoe out of the gap between the elevator and the 19th floor.

On January 19, 2010, Kelly filed a lawsuit in the Marion County Superior Court against GEPA and Schindler alleging that they were negligent in the inspection and maintenance of the subject elevator. After discovery and depositions, Schindler moved for summary judgment on January 5, 2012, claiming that Schindler, as a matter of law, did not breach a duty to Kelly or cause her injuries. In support of their motion for summary judgment, Schindler designated GEPA's answers to interrogatories from Schindler and Kelly, depositions from Kelly and Williams, and an affidavit from John Gieske ("Gieske"), GEPA's Director of Engineering. Schindler argued that Kelly simply stepped into the gap between the elevator and the 19th floor. Gieske's affidavit stated that the gap was necessary for the elevator to operate and that the gap had not been altered since the building opened in 1971. On January 6, 2012, GEPA filed a motion joining Schindler's motion for summary judgment. In joining Schindler's motion for summary judgment, GEPA incorporated all arguments and designations of evidence made by Schindler.

On March 5, 2012, Kelly responded to both defendants, designating the expert testimony of Joseph Stabler ("Stabler") as evidence that created genuine issues of material fact to preclude summary judgment. The trial court granted Schindler and GEPA time to reply so that they could depose Stabler. At Stabler's deposition, he testified that he conducted an inspection of the elevator on January 26, 2011. During his inspection, Stabler found that the metal threshold sill on the elevator was loose and tilted

forward when he applied pressure. Stabler also reviewed maintenance records provided by Schindler and elevator logs kept by GEPA. GEPA's elevator logs revealed three (3) incidents between 2007 and 2008 where the elevator stopped between three (3) to eight (8) inches above the 19th floor. Stabler concluded that based on his inspection of the maintenance records and hotel logs, Schindler and GEPA did not regularly inspect the threshold sill. Stabler also stated that the elevator's motion controller and positioning device were defective, causing the elevator to move as Kelly was exiting to the 19th floor.

On July 17, 2012, Schindler filed a motion to strike the affidavit of Stabler, arguing Stabler's opinions were not reliable under Ind. Evidence Rule 702. GEPA again joined Schindler's motion. On October 9, 2012, the trial court entered a general order granting the motion to strike and entered summary judgment in favor of Schindler and GEPA. Kelly filed her notice of appeal on October 11, 2012.

## DECISION

In appealing the grant of Schindler and GEPA's motion for summary judgment, Kelly claims that the trial court erred when it struck the affidavit of her expert. Kelly contends that Stabler's opinions on the elevator car's threshold sill and positioning device, as well as his opinions establishing the theory of *res ipsa loquitur*, create genuine issues of material fact as to whether Schindler and GEPA breached their duty to Kelly and whether the elevator's alleged malfunction proximately caused her injuries. Schindler and GEPA argue that the foundations for Stabler's opinions are unreliable.

The decision to admit or exclude evidence is within the discretion of the trial court, and this court reviews the trial court's decision for an abuse of discretion.

*Lachenman v. Stice*, 838 N.E.2d 451, 464 (Ind. Ct. App. 2005), *trans. denied*. An abuse

of discretion occurs if the trial court's decision is clearly against the logic and effect of

the facts and circumstances before it, or the reasonable, probable, and actual deductions

to be drawn therefrom. *Id.*

Indiana Evidence Rule 702(a) provides: "If scientific, technical, or other

specialized knowledge will assist the trier of fact to understand the evidence or to

determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training, or education, may testify thereto in the form of an opinion or otherwise."

> To establish an expert's qualifications, only one characteristic—
> knowledge, skill, experience, training, or education—is required, so an
> affiant may qualify as an expert based on practical experience alone. In
> addition, the proponent of expert testimony must show that the subject
> matter is distinctly related to some scientific field, business, or profession
> beyond the knowledge of the average [layperson]. Where an expert's
> testimony is based upon the expert's skill or experience rather than on the
> application of scientific principles, the proponent of the testimony must
> only demonstrate that the subject matter is related to some field beyond the
> knowledge of lay persons and that the witness possesses sufficient skill,
> knowledge or experience in the field to assist the trier of fact.

*Jackson v. Trancik*, 953 N.E.2d 1087, 1092 (Ind. Ct. App. 2011) (internal citations

omitted). "It is apparent that Indiana Evidence Rule 702 assigns to the trial court a

'gatekeeping function' of ensuring that an expert's testimony both rests on a reliable

foundation and is relevant to the task at hand." *Lytle v. Ford Motor Co.*, 814 N.E.2d 301,

308 (Ind. Ct. App. 2004), *trans. denied*.

Stabler's opinion that the threshold sill on the elevator was loose on February 29,

2008 is based upon his inspection and Kelly's testimony that the heel of her shoe slid into

the gap between the elevator and the floor when the elevator moved upon her exit. Further, maintenance records from Schindler and GEPA show little to no inspection of the threshold sill in the elevator, especially in the timeframe before and immediately after Kelly's incident. Schindler and GEPA's argument goes more to the weight a fact-finder would give Stabler's theory at trial instead of its admissibility.

As to the positioning device, Stabler relied on the fact that the elevator had three (3) incidents which he claims are similar to the one on February 29, 2008. One occurred April 7, 2007, where the elevator stopped six (6) inches above the 19th floor. Another occurred on January 20, 2008, where the elevator was stuck three (3) inches above the 19th floor. Finally, the last incident Stabler relied on occurred on March 3, 2008, where the elevator was stuck eight (8) inches above the 19th floor. Schindler and GEPA argue that these events are not similar because there is no evidence that anyone was injured in the same manner as Kelly.

"In cases involving the existence of an alleged dangerous condition[,] evidence of the occurrence of prior accidents of a similar character under the same circumstances is admissible to show both the existence of the dangerous condition and notice thereof." *State by and Through Ind. State Highway Comm'n v. Fair*, 423 N.E.2d 738, 740 (Ind. Ct. App. 1981). Such evidence is not admissible unless the plaintiff shows similarity between the essential conditions surrounding the prior accidents and the one at issue. *Id*. A proper foundation includes the general requirements of similarity of conditions, reasonable proximity in time, and avoidance of confusion of the issues. *Id*. at 741.

Here, the occurrences Stabler relies upon happened on the same elevator over a period of ten (10) months and one (1) month before, and three (3) days after Kelly's fall on February 29, 2008. Stabler testified that these events were similar to Kelly's incident because they were all incidents of the elevator not positioning correctly at the 19th floor and their cause was the motion control panel. While we agree with Schindler and GEPA that the incident three (3) days after Kelly's fall would not be admissible to show notice, it is certainly relevant to showing a potential malfunction with the elevator. Stabler's reliance on these incidents are further bolstered by maintenance records provided by Schindler, which reveal that the components Stabler believes caused the elevator's malfunction were not regularly inspected by Schindler. Again, Schindler and GEPA's arguments go more to the weight a fact-finder would give Stabler's conclusions at a trial and not their admissibility. Therefore, Stabler's reliance on these incidents to formulate his opinion was not improper.

Kelly further claims that Stabler's testimony allows for the doctrine of *res ipsa loquitur* to apply in this case.

> The doctrine [of *res ipsa loquitur*] literally means the thing speaks for itself. *Res ipsa loquitur* is a rule of evidence which permits an inference of negligence to be drawn based upon the surrounding facts and circumstances of the injury. The doctrine operates on the premise that negligence, like any other fact or condition, may be proved by circumstantial evidence. To create an inference of negligence, the plaintiff must establish: (1) that the injuring instrumentality was within the exclusive management and control of the defendant or its servants, and (2) that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. In determining if the doctrine is applicable, the question is whether the incident more probably resulted from [the] defendant's negligence as opposed to another cause. To invoke *res ipsa loquitur*, the plaintiff must demonstrate that the defendant

had exclusive control of the injuring instrumentality at the time of the injury. Exclusive control is an expansive concept[,] which focuses upon who has the right or power of control and the opportunity to exercise it. The existence of multiple defendants or the possibility of multiple causes does not automatically defeat the application of *res ipsa loquitur*.

*Rector v. Oliver*, 809 N.E.2d 887, 890 (Ind. Ct. App. 2004) (internal citations and quotations omitted), *trans*. *denied*. Schindler and GEPA argue that *res ipsa loquitur* does not apply because Schindler was not in exclusive control of the elevator at the time of the incident and that Stabler's testimony itself establishes that the doctrine cannot apply. We disagree.

First, we note that Schinlder's argument on control focuses on physical control of the elevator. As stated in *Rector*, control in regards to *res ipsa loquitur* is more than physical control; the focus is on "the right or power of control and the opportunity to exercise it." *Id.* Here, where Kelly's allegation is negligent inspection and maintenance of the elevator, the only party with the power or opportunity to inspect and maintain the motion controller and positioning device of the elevator is Schindler. At his deposition, Stabler testified that a well-maintained elevator can malfunction. However, Stabler's ultimate conclusion is that Schindler did not reasonably inspect and maintain the elevator. Stabler's education and experience allows him to opine that Kelly's fall does not occur if Schindler reasonably inspects and maintains the elevator. Finally, notwithstanding Schindler and GEPA's claim that Kelly simply stepped into the gap between the elevator and the 19th floor, the evidence in the record allows for the inference that the accident

happened more probably from Schindler and GEPA's negligence than any other cause. *Res ipsa loquitur* can apply in this case.[1]

Kelly has laid the proper foundation for the admissibility of Stabler's opinion under Evid. R. 702. "Once the admissibility of the expert's opinion is established under Rule 702, then the accuracy, consistency, and credibility of the expert's opinions may properly be left to vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact." *Bennett v. Richmond*, 960 N.E.2d 782, 786 (Ind. 2012) (internal citation and quotation marks omitted). Accordingly, we find that the trial court abused its discretion in striking Stabler's opinion.

Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Summary judgment is rarely appropriate in negligence cases. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id*. To prevail on a claim of negligence the plaintiff must show: (1) duty owed to the plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by

---

[1] "This also does not mean that the plaintiff wins by default, for the doctrine of *res ipsa loquitur* simply allows an inference of negligence which may or may not be drawn by the trier of fact." *Rector*, 809 N.E.2d at 890. The defendant can rebut this inference, like any other inference, with relevant evidence.

defendant's breach of duty. *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007).

Here, both of the parties frame their argument around the position that expert testimony was required to advance Kelly's claim and is dispositive to our analysis. Having found that the trial court should have admitted Stabler's affidavit, Schindler and GEPA still assert that, even with Stabler's affidavit, they were not placed on notice of the malfunction of the elevator and therefore are not subject to liability. Schindler claims that because it performed maintenance on the elevator a month prior to Kelly's fall and was not notified of problems, it was not on notice of a defective motion controller. Again, we disagree.

"Whether a particular act or omission is a breach of duty is generally a question of fact for the jury. *Northern Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003). It can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts." *Id*. With the allegations being negligent inspection and maintenance, a juror could reasonably conclude, based on Stabler's opinion, that a more careful inspection of the elevator on the two incidents prior to Kelly's fall would have revealed a defect in the motion controller. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

ROBB, C.J., and MAY, J., concur.