



IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-CT-158

## Kiera Isgrig,
*Appellant (Plaintiff below),*

–v–

## Trustees of Indiana University,
*Appellee (Defendant below).*

Argued:[1] October 1, 2024 | Decided: April 22, 2025

Appeal from the Monroe Circuit Court

No. 53C01-2004-CT-723

The Honorable Geoffrey J. Bradley, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 23A-CT-1332

**Opinion by Justice Massa**

---

[1] We held oral argument in Newton County. We thank South Newton County High School for its outstanding hospitality, the parties for their travel and advocacy as well as the students from South Newton Senior High School, North Newton Junior/Senior High School, Frontier Junior/Senior High School, North White High School, Tri-County Junior/Senior High School, Benton Central Junior/Senior High School and Twin Lakes Senior High School for their respectful attention and insightful questions.

Chief Justice Rush and Justice Goff concur.
Justice Molter dissents with separate opinion in which Justice Slaughter
joins.


**Massa, Justice.**

The doctrine of *res ipsa loquitur*, meaning the "thing speaks for itself," is a rule of circumstantial evidence that may be used to infer negligence from certain types of accidents that typically do not happen without someone's negligence. In such bizarre and rare circumstances, where direct evidence of cause is unavailable, we ask whether the event was probably more occasioned by negligence of the defendant rather than some other cause. In 2018, in Bloomington, such a bizarre event took place. Kiera Isgrig, a college student, was injured after a window and its casing, without warning, fell on her while she was studying with friends. As there was no direct evidence pointing to the cause of the window falling, Isgrig filed a complaint against the Trustees of Indiana University ("the University") alleging negligence and asserting *res ipsa loquitur*. However, the trial court granted summary judgment for the University. Based on an analysis of our evolving common law, we conclude that the doctrine of *res ipsa loquitur* may be applied to premises liability cases involving fixtures where an invitee is injured on a landowner's premises. We thus find that Isgrig has demonstrated a genuine issue of material fact to overcome summary judgment. Accordingly, we reverse and remand.


## Facts and Procedural History

In April 2018, Isgrig sat with her friends in Room 138 of Swain Hall. She had been studying for her final exams for several hours and sat by the wall with her back to the exterior southeast window. While there, no one touched the window behind her. Yet suddenly, without warning, the window, its frame and casing, fell inward out of the wall and landed on her head. The window shattered, causing Isgrig to suffer injuries.

Following this incident, Kevin Ashley, the University's physical plant carpenter at the time, repaired and replaced the window. The evidence shows that when the window is in its casing, the bottom panel of the window can be raised vertically and partially to open. Ashley found no defect with the window or its casing which could have allowed the window to fall out of its case. Ashley noted that the window had a metal frame with adjustable blinds between two glass panes. Ashley did find that two of the window's four sash springs were broken. However, based on his expertise, he found that this should not have caused the window to fall out without any warning. Ashley, therefore, concluded that there must have been some previous human involvement.

Swain Hall is open and accessible to students and the public at large for lectures and studying. Like most windows in the building, the windows in Room 138 may be opened and closed as desired. Based on the University's maintenance policy, maintenance staff perform reactionary maintenance on windows when notified of issues requiring attention. The University's records show that this particular window was last serviced by staff in March 2017, when its blinds were repaired. Repairing blinds would have required staff to remove the window from its casing, at which point any other faults discovered, such as broken sash springs, would have also been repaired. No such damage was revealed, and thus no further work was performed on the window after the March 2017 repair of the blinds.

Isgrig filed a complaint against the University alleging negligence and asserting the doctrine of *res ipsa loquitur*. The University moved for summary judgment on the grounds that Isgrig failed to make a prima facie case of negligence under the premises liability standard. First, the University argued that it had neither actual nor constructive knowledge regarding any issues with the window and that the doctrine of *res ipsa loquitur* does not relieve Isgrig of proving that they had either actual or constructive knowledge. Second, the University argued that even if *res ipsa loquitur* applied, it did not have exclusive control of the window as required to succeed under the doctrine.

Isgrig argued that the window was under the exclusive control or management of the University and that *res ipsa loquitur* allows an

inference of negligence, but the trial court granted summary judgment to the University.

Isgrig appealed, arguing that the trial court erred because the doctrine of *res ipsa loquitur* applies to fixtures in premises liability cases and that, given the broad definition of "exclusive control," there is at least a genuine issue of material fact as to whether the window was under the exclusive control and management of the University at the time the window fell on her. The University responded that the trial court properly granted summary judgment in its favor because: (1) Isgrig cannot make a prima facie case of negligence under the premises liability standard, (2) *res ipsa loquitur* cannot apply if a plaintiff cannot also establish the elements of premises liability, and (3) *res ipsa loquitur* is inapplicable under the facts of the present case.

The Court of Appeals reversed and remanded. The court found that Isgrig can proceed under a claim of *res ipsa loquitur* per this Court's decision in *Griffin v. Menard, Inc.*, 175 N.E.3d 811 (Ind. 2021). The panel found that a window suddenly falling out of a wall—with no one interacting with it—is not the sort of thing that occurs absent negligence. *Isgrig v. Trs. of Ind. Univ.*, 225 N.E.3d 781, 789 (Ind. Ct. App. 2023). The court likened the falling of the window in this case to the falling of a ceiling light, because a reasonable fact finder could determine that opening and closing the window or blinds should not cause the window to fall absent negligence. The Court of Appeals also found that there was sufficient evidence that the University exercised exclusive control and management over the window at the time it fell out of the wall.

The University sought transfer, which we granted, thereby vacating the Court of Appeals' decision. Ind. Appellate Rule 58(A); *See Isgrig v. Trs. of Ind. Univ.*, 235 N.E.3d 134 (Ind. 2024). The Defense Trial Counsel of Indiana (DTCI) filed an amicus brief in support of the University, arguing the Court of Appeals misinterpreted *Griffin*.

# Standard of Review

We review summary judgment decisions de novo, applying the same standard as the trial court. *Serv. Steel Warehouse Co., v. U.S. Steel Corp.*, 182 N.E.3d 840, 842 (Ind. 2022). "The moving party 'bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.'" *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012) (quoting *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012)). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* In determining whether summary judgment is proper, we consider only the evidentiary material specifically designated by the parties to the trial court and construe all factual and reasonable inferences in favor of the non-moving party. *See Ebert v. Ill. Cas. Co.*, 188 N.E.3d 858, 863 (Ind. 2022) (citing *Reed*, 980 N.E.2d at 285). We are, therefore, not bound by the trial court's findings and conclusions and will affirm if the trial court's entry of summary judgment can be sustained on any theory or basis in the record. *See Kumar v. Bay Bridge, LLC*, 903 N.E.2d 114, 116 (Ind. Ct. App. 2009).

# Discussion and Decision

Isgrig seeks to demonstrate a genuine issue of material fact by applying the doctrine of *res ipsa loquitur* to infer that the University was negligent. Conversely, the University argues that *res ipsa loquitur* is not applicable unless a plaintiff first establishes that the defendant would be liable under a theory of premises liability.

These two competing arguments frame the question for this Court: whether a plaintiff can utilize the doctrine of *res ipsa loquitur* to infer negligence in a premises liability case. We find that our case law allows the doctrine in premises liability cases "[i]f [the] injury results from a fixture or other component that [others] did not or could not disturb . . . and the incident would not normally occur absent negligence[.]" *Griffin*,

175 N.E.3d at 816. And, in proceeding on such a theory, a plaintiff need not first establish the elements of premises liability.

# I. Premises Liability and the Doctrine of *Res Ipsa Loquitur*

Indiana law has evolved to permit the application of *res ipsa loquitur* in premises liability negligence cases involving injury caused by fixtures. In order to properly understand how premises liability and the doctrine of *res ipsa loquitur* correlate, we must first analyze each independently.

## A. Premises Liability Negligence

> To recover under a theory of premises liability sounding in negligence, the plaintiff must prove three elements: (1) a duty owed to the plaintiff, (2) a breach of that duty by the defendant, and (3) the breach proximately caused the plaintiff's damages. A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one of the elements of the plaintiff's claim.

*McCraney v. Gibson*, 952 N.E.2d 284, 288 (Ind. Ct. App. 2011) (internal citations omitted).

"[I]n premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred." *Daisy v. Roach*, 811 N.E.2d 862, 867 (Ind. Ct. App. 2004) (citation omitted). "The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). Only the party who controls the land has the right to prevent others from coming onto it and can remedy the hazardous conditions which exist upon it. The party that is in control of the land has the exclusive ability to prevent injury from occurring. *Harris v. Traini*, 759 N.E.2d 215, 225 (Ind. Ct. App. 2001) (internal citations omitted). Therefore, "[l]iability for injury ordinarily depends upon the power to prevent

injury." *Cox v. Stoughton Trailers, Inc.*, 837 N.E.2d 1075, 1081 (Ind. Ct. App. 2005) (quoting *Mishler v. State*, 730 N.E.2d 229, 231 (Ind. Ct. App. 2000)).

It is well established in Indiana that a person's status on the land determines the duty that the landowner owes them. Over "the last two centuries, English and American common law courts have categorized a person entering the land of another as [either] an invitee, a licensee, or a trespasser." *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991). "[A] landowner owes a trespasser the duty to refrain from willfully or wantonly (intentionally) injuring him after discovering his presence." *Id.* On the other hand, a licensee is a person who legally "enter[s] the land of another for their own convenience, curiosity, or entertainment and take[s] the premises as they find them. Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's or occupier's permission or sufferance." *Taylor v. Duke,* 713 N.E.2d 877, 881 (Ind. Ct. App. 1999) (internal citations omitted).

Finally, we have held that "a landowner owes the highest [level of duty] to an invitee: a duty to exercise reasonable care for his protection while he is on the landowner's premises." *Burrell*, 569 N.E.2d at 639. An invitee may fall within one of three categories: public invitee, business visitor, or social guest. A public invitee is someone who has been invited to enter or remain on another's land for the purpose for which it is held open to the public, and a business visitor is invited to enter or remain on the land for a purpose directly or indirectly connected with business with the possessor of the land. *Taylor*, 713 N.E.2d at 881 (citing *McCormick v. State*, 673 N.E.2d 829, 836 (Ind. Ct. App. 1996)). Although we hold the highest standard for invitees, it is important to note that the landowner is "not absolutely liable for, or an insurer of, the invitee's safety." *Cergnul v. Heritage Inn of Ind., Inc.*, 785 N.E.2d 328, 331 (Ind. Ct. App. 2003).

In 1991, in *Burrell,* this Court adopted the following language from the Restatement (Second) of Torts regarding the liability of a landowner or premises occupier when an invitee is injured by a condition existing on the premises owner's property:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Burrell*, 569 N.E.2d at 639–40 (quoting Restatement (Second) of Torts § 343 (1965)).

There is no question that, in this case, Isgrig is an invitee of the University, as she is a student who pays tuition to attend school and use its study halls. *See Taylor*, 713 N.E.2d at 881. Under our established law, the University owed Isgrig a duty to exercise reasonable care while she was on campus premises, which extends to protections against dangerous conditions on the premises. *See Burrell*, 569 N.E.2d at 639–40.

## B.    Doctrine of *Res Ipsa Loquitur*

The doctrine of *res ipsa loquitur* is defined literally as "the thing speaks for itself." *Golden Corral Corp. v. Lenart*, 127 N.E.3d 1205, 1218 (Ind. Ct. App. 2019) (quoting *Narducci v. Tedrow*, 736 N.E.2d 1288, 1292 (Ind. Ct. App. 2000). Normally, we understand that negligence itself cannot be presumed from the mere fact that an accident occurs. *Gold v. Ishak*, 720 N.E.2d 1175, 1180 (Ind. Ct. App. 1999). However, *res ipsa loquitur* is a rule that permits "a qualified exception to the general rule that the mere fact of an injury will not create an inference of negligence." *Golden Corral*, 127 N.E.3d at 1218 (internal citations omitted). "[T]his doctrine operates on the premise that negligence, like any other fact or condition, may be proved by circumstantial evidence." *Rector v. Oliver*, 809 N.E.2d 887, 889–90 (Ind. Ct. App. 2004) (citing *K-mart Corp. v. Gipson*, 563 N.E.2d 667, 669 (Ind. Ct. App. 1990), *trans. denied*). It provides a vehicle for plaintiffs to infer that the defendants were negligent when evidence of causation is lacking. *Ross v. Olson*, 825 N.E.2d 890, 893 (Ind. Ct. App. 2005).

"Application of the doctrine of [*res ipsa loquitur*] does not in any way depend on the standard of care imposed by law but, rather, depends

entirely upon the nature of the occurrence out of which the injury arose." *Golden Corral*, 127 N.E.3d at 1219 (internal citations omitted). The leading case that established the doctrine came from England, the foundational source of our common law. In *Byrne v. Boadle* (1863), 2 H. & C. 722, 159 Eng. Reprint 299, the evidence showed that the plaintiff was struck by a flour barrel which fell from a window above the street. The court decided that typically, barrels do not ordinarily fall out of windows unless someone is negligent, so the court held that the plaintiff had made out a prima facie case of negligence. *See Rector*, 809 N.E.2d at 892–93. The doctrine recognizes "that in some situations, an occurrence is so unusual, that absent reasonable justification, the person in control of the situation should be held responsible." *Cergnul*, 785 N.E.2d at 331 (citing *Shull v. B.F. Goodrich Co.*, 477 N.E.2d 924, 926 (Ind. Ct. App. 1985).

While the principle of *res ipsa loquitur* originated in English common law, our Indiana courts have long recognized it, noting that "[w]hether the doctrine . . . applies in any given negligence case is a mixed question of law and fact." *Griffin*, 175 N.E.3d at 815. We apply *res ipsa loquitur* by asking "whether the event was more probably occasioned by negligence of the defendant rather than some other cause." *Shull*, 477 N.E.2d at 926–27. We do so because *res ipsa loquitur* "is premised upon [an] assumption that in certain instances an occurrence is **so unusual** that, absent a reasonable justification or explanation, those persons in control of the situation should be held responsible." *Id.* at 926. (citing *Carpenter v. Campbell*, 271 N.E.2d 163 (Ind. Ct. App. 1971)) (emphasis added). "The basis or reasoning for this principle, in its origin at least, seemed to have been that the defendant had exclusive control over the injuring agency and the plaintiff had no access to any information about its control and operation." *New York, C. & St. L. R. Co. v. Henderson*, 146 N.E.2d 531, 536 (Ind. 1957), *modified by Shuamber v. Henderson*, 579 N.E.2d 452 (Ind. 1991).

To rely on the doctrine, a plaintiff must present evidence that "(1) the injuring instrumentality is under the exclusive control of the defendant, and (2) the accident is one which in the ordinary course of things does not happen if those who control the instrumentality use proper care." *Shull*, 477 N.E.2d at 927. "The plaintiff's burden in this regard is to produce a

reasonable showing that the injury was indeed one which would not ordinarily occur in the absence of proper care on the part of those who manage or maintain the instrumentality." *Gold*, 720 N.E.2d at 1181.

"The exclusive control requirement of the *res ipsa loquitur* doctrine requires that the plaintiff demonstrate that the defendant had exclusive control over the instrumentality at the time of the alleged negligent act." *Rector*, 809 N.E.2d at 892. Exclusive control focuses upon who has the right or power of control and the opportunity to exercise it. *Id.* at 890 (citing *Shull*, 477 N.E.2d at 933). Our courts find that the mere existence of multiple defendants or possibility of multiple causes does not automatically defeat the application of the doctrine. *Id.* (citing *Vogler v. Dominguez*, 624 N.E.2d 56, 62 (Ind. Ct. App. 1993)). **To prove the element of exclusive control, it is not necessary for the plaintiff to eliminate every other possibility other than the defendant's negligence as a cause.** *Id.* at 891. We reduce this burden because *res ipsa loquitur* does not require pointing to "a single specific act or omission, [but], typically, it points to several alterative explanations involving negligence without indicating which of them is more probable than the other." *Vogler*, 624 N.E.2d at 62 (internal citations omitted). Therefore, the trier of fact is the one presented with a number of different causes or inferences of negligence, and we leave it to them to make their determination. *See id*.

The plaintiff must also prove that **"the occurrence was such that in the ordinary course of events the injury would not have occurred if proper care had been exercised."** *Deming Hotel Co. v. Prox*, 236 N.E.2d 613, 619 (Ind. Ct. App. 1968) (emphasis added). To establish this second element of *res ipsa loquitur*, the plaintiff can rely on common knowledge or expert testimony if the issue is beyond the understanding of the layperson. *St. Mary's Ohio Valley Heart Care, LLC v. Smith*, 112 N.E.3d 1144, 1150 (Ind. Ct. App. 2018) (citing *Vogler*, 624 N.E.2d at 61).

If the plaintiff satisfies these elements and the doctrine of *res ipsa loquitur* applies, an inference of negligence remains in the case to be weighed by the trier of fact even if the defendant comes forward with an explanation for the incident. *New York,* 146 N.E.2d at 537; *see also* Ind. Evid. R. 301. Furthermore, even "the drawing of such an inference in itself

does not fix the proximate cause of the accident, [] the jury must still determine the proximate cause, even though such permissible inference of negligence is drawn." *Id.* at 541. Therefore, because the application of the doctrine of *res ipsa loquitur* is only said to create an inference of negligence, *Cox v. Paul*, 828 N.E.2d 907, 912 (Ind. 2005), the plaintiff still bears the burden of proving the other elements of negligence. The inference of negligence does not vanish when the defendant provides an explanation but rather stays in the case to be considered with all other evidence by the triers of fact. The weight to be given towards this inference of negligence is solely for those determining the facts. *Deming Hotel*, 236 N.E.2d at 620 (citing *New York,* 146 N.E.2d at 537).

## II. *Res Ipsa Loquitur* in the Context of Premises Liability

Over time, our courts have applied the doctrine of *res ipsa loquitur* to infer negligence to defendant landowners where the plaintiff invitee has been injured on property within the exclusive control and management of the defendant. "In other words, premises liability and *res ipsa loquitur* are not two entirely different beasts." *Rector*, 809 N.E.2d at 894–95.

In 1966, our Court of Appeals held that the doctrine of *res ipsa loquitur* applied in a premises liability case after a chandelier fell on a business invitee. *See generally Rust v. Watson*, 215 N.E.2d 42 (Ind. Ct. App. 1966). Similarly, in *Deming Hotel*, our Court of Appeals applied *res ipsa loquitur* to infer negligence when a hotel guest was injured by a mirror that fell on her while eating at the defendant's hotel restaurant. 236 N.E.2d at 620.

In 1985, the Court of Appeals in *Shull* held that the evidence was sufficient to have instructed the jury on the doctrine of *res ipsa loquitur* after a trucker was injured due to the malfunction of a dock plate on the defendant's loading dock. The court explained that while the events are often unusual, rare or bizarre, that is not a prerequisite to the application of the doctrine. Rather, "the true question is whether the event was more probably occasioned by negligence of the defendant rather than some other cause." *Shull*, 477 N.E.2d at 926–27.

The court concluded that because the defendant had been the sole occupant of the factory from the time it was built, as well as the one who installed and maintained the dock, this was sufficient to establish the exclusive control element for *res ipsa loquitur*. The court found that a jury nevertheless could still hear the defendant's argument that the plaintiff was contributorily negligent at the time of injury and incurred the risk, but that does not remove *res ipsa loquitur* from the case where it was otherwise applicable. *Id.* at 933.

In 1990, in *K-Mart*, the Court of Appeals affirmed the trial court's decision to give a jury instruction on *res ipsa loquitur* after a rack installed and maintained by K-Mart fell on the plaintiff, a patron of the store. 563 N.E.2d at 668. The Court of Appeals agreed "that display racks do not ordinarily fall in the absence of someone's negligence, and . . . [w]hile the evidence . . . may not be compelling, it was enough for a reasonable juror to infer negligence." *Id.* at 670. The court reasoned that as the rack was installed by a K-Mart employee and no evidence was presented that a third party tampered with the rack "[i]t is reasonable to infer that negligence for a failing instrumentality is attributable to that party who was responsible for installing and maintaining the instrumentality." *Id.* at 671. The court rejected K-Mart's argument that the plaintiffs failed to establish that it exercised exclusive control because they did not eliminate other causes for the rack's fall, including the possibility that another customer may have had access to or tampered with or caused a dislodging of the display. In doing so, the court illustrated that the assertion of the doctrine of *res ipsa loquitur* does not require proving that the defendant's negligence was the only cause of the accident but instead asks whether the accident would probably not have happened. "All inferences from the evidence, including those arising from the *res ipsa loquitur* doctrine, are to be placed in the scales to be weighed by the trier of fact." *Id*. The court highlighted that the doctrine is designed to allow an inference of negligence where evidence of causation is lacking. Therefore, the plaintiff's failure to present evidence of causation **does not** preclude the application of *res ipsa loquitur* to the facts of the case. *Id.* (emphasis added).

However, in 2003, in *Cergnul*, the Court of Appeals did not find that the doctrine applied when the plaintiff fell and was injured after a handrail

came out of the wall at a hotel where she stayed. The court concluded that even if the hotel was in exclusive control, there were other reasons excluding negligence for why the handrail came loose, including vandalization by another patron. 785 N.E.2d at 332. Under the first element of *res ipsa loquitur*, the court did acknowledge that "Heritage Inn was in the exclusive possession of the railing after the contractor had installed it, [however], it is axiomatic that stair railings can become loose and fall through no negligence on the part of the landowner." *Id.* However, the court failed to find that the accident was one that in the ordinary course of things does not happen if those who control the instrumentality use proper care. As both the plaintiff and defendant presented no evidence showing that there was any issue with the railing prior to the fall, the court found that "Cergnul [took] a broad leap in speculation to suggest that merely because the handrail became detached from the wall, it did so only because of Heritage Inn's negligence." *Id.* The court went on to distinguish Cergnul's analogy to *K-Mart*, where "it was shown that the agents of the store had installed the device and were responsible for maintaining it." *Id.* The court concluded that *res ipsa loquitur* was not applicable and the court did not infer negligence on the part of Heritage Inn for the broken stair railing under those circumstances. *Id.*

In 2004, in *Rector*, a customer brought a personal injury action against the owner of the premises after she was struck by a light fixture which fell from the store's ceiling. 809 N.E.2d at 888–89. The Court of Appeals found that *res ipsa loquitur* could apply. The court found there was a genuine issue of material fact as to whether the premises owner could have discovered a defect in the light fixture through the exercise of reasonable care which, ultimately, precludes a granting of summary judgment in favor of the premises owner. The court stressed that even though "the evidence might indicate that [defendant] did not know that the light had become loose or might fall, it does not answer the question of whether, in the exercise of reasonable care, she could have discovered the condition." *Id.* at 893. A landowner's duty to invitees is to exercise reasonable care under the circumstances, "which includes the duty to reasonably inspect and maintain the premises." *Id.* For these reasons, the court decided that

"[r]egardless of who installed the light fixture, we cannot say that a light fixture falling from the ceiling of a business is the sort of event which ordinarily happens if those who have the management and control exercise proper care." *Id.* at 892. The court further emphasized that it is for the jury to determine whether the failure to discover the condition of the light fixture, and/or to remedy it, amounted to a breach of duty. *Id.* at 893–94.

Finally, in 2021, the interplay of *res ipsa loquitur* and premises liability was discussed by this Court. In *Griffin*, the plaintiff was injured after attempting to pull a box off a store shelf. 175 N.E.3d at 812. While pulling the box, the box's bottom staples became undone, causing its contents, a sink, to fall on and injure the plaintiff. At the time, when the plaintiff picked up the box from the shelf, he had not noticed that the staples were coming loose. *Id.* The defendant store filed a motion for summary judgment alleging that it had no actual or constructive knowledge of any issues with the box in question. In response, the plaintiffs argued that there still remained an issue of material fact regarding the defendant's knowledge and sought to apply *res ipsa loquitur* to their claim. *Id.*

We held that based on the facts and circumstances, there was no issue of material fact because there was no evidence presented that the defendants had either actual or constructive knowledge that the box was defective. Therefore, *res ipsa loquitur* did not apply. *Id.* We noted that *Rector* held that if "there's no liability under a premises liability standard, *res ipsa* cannot apply. As such, determining the *res ipsa* issue is necessarily dependent on whether a defendant can be liable under premises liability in the first place." *Id.* at 815. Then, once the plaintiff has established liability under premises liability, "assuming *res ipsa* applies here, the doctrine requires that the injuring instrumentality was within the exclusive management and control of the defendant." *Id.* After applying this standard to the facts, we concluded that the plaintiff could not rely on *res ipsa loquitur* because other customers had access to the sink box, and "it seems like speculation that the only way the sink could have fallen out of the box was because [the defendant was] negligent when the box could have been handled/tampered with by another customer." *Id*. at 816. In reaching this conclusion, we highlighted that the "showing of exclusive

control is difficult when the injuring instrumentality is accessible to customers," and that the bar is set high for a plaintiff to show that an occurrence is so unusual that it would not ordinarily happen in the absence of someone's negligence. *Id.*

The University relies on *Griffin* to argue that where a plaintiff in a premises liability case cannot make a prima facie case for negligence, *res ipsa loquitur* can never save the case from dismissal. The University contends that this Court in *Griffin* confirmed that the underlying premises liability standard must be satisfied before *res ipsa loquitur* can apply.

We find, however, a crucial distinction which separates *Griffin* from the instant case. The *Griffin* Court noted that it declined to hold that *res ipsa loquitur* can never apply to a premises liability case. "If an injury results from a **fixture** or other component that customers did not or could not disturb—such as a chandelier suspended from the ceiling, or a set of shelves bolted to the wall—and the incident would not normally occur absent negligence, *res ipsa* could be appropriate." *Id.* (emphasis added) (citing *Rust*, 215 N.E.2d at 44–45).

We have long held that a fixture is "a thing that originally was a chattel, but has become a part of real estate by reason of attachment thereto by one having an interest therein." *Ochs v. Tilton*, 103 N.E. 837, 838 (Ind. 1914). We find that our use of the word **fixture** in *Griffin* was not unintentional. In that last paragraph, this Court made the distinction that where the injuring instrumentality is a fixture, then *res ipsa loquitur* could be applicable in premises liability. *Griffin* foresaw the circumstances here, where a window and its frame—a fixture that is bolted to the wall— became the injuring instrumentality.

## III. Isgrig Can Rely on the Doctrine of *Res Ipsa Loquitur* to Overcome Summary Judgment.

This foregoing survey of Indiana law leads us to hold that *res ipsa loquitur* is appropriate in premises liability where the injuring instrumentality is a fixture and where such an incident would not

normally occur absent negligence. *Griffin*, 175 N.E.3d at 816. To rely on *res ipsa loquitur*, the plaintiff must still present evidence that (1) the injuring instrumentality is under the exclusive control of the defendant, and (2) the accident is one which in the ordinary course of things does not happen if those who control the instrumentality use proper care. *See Shull*, 477 N.E.2d at 927.

Isgrig argues that she designated sufficient evidence to permit her to proceed to trial on a theory of *res ipsa loquitur*. She also argues that the window was under the exclusive control or management of the University, and that windows do not ordinarily fall out of walls if those who have management or control have exercised proper care. We agree on both points.

The University argues that Isgrig cannot succeed on a theory of *res ipsa loquitur* without first establishing premises liability. The first two prongs of premises liability ask the plaintiff to show that the landowner should have known about a defect that the invitee could not have discovered on their own. *Burrell*, 569 N.E.2d at 639–40. *Griffin* states that "if there's no liability under a premises liability standard, *res ispa* [sic] cannot apply," and that "determining the *res ispa* [sic] issue is necessarily dependent on whether a defendant can be liable under premises liability in the first place." 175 N.E.3d at 815. We find that this standard in *Griffin*, requiring the plaintiff to show that the defendant had actual or constructive knowledge before demonstrating the two elements of *res ipsa loquitur* is duplicative and unnecessary. This is because a showing that the injuring instrumentality was within the exclusive management and control of the defendant, and that the accident was one that does not ordinarily happen if those who have management and control exercise proper care (the first two elements of *res ipsa loquitur*) reaches the same result as requiring the plaintiff to establish the first two prongs of the premises liability standard. Whether a defendant knew or reasonably should have known about the defect in an injuring instrumentality is exactly the sort of information that *res ipsa loquitur* is intended to supply by inference. *Curtis v. Lein*, 239 P.3d 1078, 1082 (Wash. 2010). Therefore with respect to this standard, which was adopted in *Griffin*, we find that where the injuring instrumentality is a fixture and if the plaintiff is relying on *res ipsa loquitur*, they do not need to

first establish that the defendant had actual and constructive knowledge of the fixture's defect.

This reasoning is supported by our understanding of fixtures, which, by their nature, are permanently attached—or fixed—to the property and have, therefore, become part of the real estate by reason of attachment. *See Ochs*, 103 N.E. at 838. As the landlord has a duty to exercise reasonable care to invitees, which includes the duty to reasonably inspect and maintain the premises, *see Burrell*, 569 N.E.2d at 639–40 (quoting Restatement (Second) of Torts § 343 (1965)), it follows that such a duty extends to fixtures on the premises, which are a part of the real property. *See 11438 Hwy. 50, LLC v. Luttrell*, 81 N.E.3d 261, 265 (Ind. Ct. App. 2017).

Here, the evidence shows that the window is a fixture and thus *res ipsa loquitur* could apply. The evidence demonstrates that the window fell out of the wall with its entire frame and casing, which was affixed to the surrounding wall. The window in this case was a fixture more akin to a set of bolted shelves, the chandelier in *Rust*, or the mirror in *Deming Hotel*. Like the lighting fixture in *Rector*, we "cannot say that a [window] fixture falling from the ceiling of a business is the sort of event which ordinarily happens if those who have the management and control exercise proper care." 809 N.E.2d at 892.

The University argues that even if *res ipsa loquitur* could apply, Isgrig cannot establish that the window was within the exclusive management and control of the University. We disagree. First, the University does not dispute that it installed and maintained the window. *K-Mart*, 563 N.E.2d at 671 (noting that it is reasonable to infer that negligence for a falling instrumentality is attributable to that party who was responsible for installing and maintaining that instrumentality). Second, while it is true that any student can open and close the window, Ashley, the University carpenter, testified the window must be maneuvered in a precise manner in order for it to come out of its casing. Third, the sash springs that were broken on this window are not visible unless the window is removed from its casing. Finally, no evidence was presented that anyone other than University personnel interacted with the window in the time period leading up to the incident who could remove it from its casing

causing it to fall in the way that it did. Based on the way that the window and its frame fell, the evidence presented leads us to conclude that under these circumstances, the window was under the exclusive management and control of the University.

The University also argues that because multiple people have access to the window, anyone could have interfered with it. However, this heightens the burden of proof required for the exclusive control element of *res ipsa loquitur*. The doctrine does not require the plaintiff to prove that the defendant's negligence was the *only cause* of the accident. Instead, it asks if the accident would not have happened if those who had the management or control of it exercised proper care. While it is possible that the window could have been tampered with by other invitees to Swain Hall, Isgrig does not have to disprove every other possibility to rely on *res ipsa loquitur* and infer that the University was negligent. *Rector*, 809 N.E.2d at 891. In this way, "all inferences from the evidence, including those arising from the *res ipsa loquitur* doctrine, are to be placed in the scales to be weighed by the trier of fact." *K-Mart*, 563 N.E.2d at 671.

The dissent finds that because the window was in a room that is open to students, faculty and visitors who could have operated or manipulated the window since the University performed its last maintenance check, the University did not have exclusive control over the window. *Post*, at 4. This, however, overlooks crucial facts that the window had two broken sash springs and fell out of its entire casing. These two facts are not typical defects that would occur through the usual manipulation of opening and closing the window by students, faculty or the general public. Yet, evidence was presented that University workers handled the window (removing it from its casing and inspecting the sash springs) one year before the incident. The way in which the window fell aligns with the methods employed by the University prior to the incident. We find that our conclusion is not a guess but rather, a "logical deduction from other facts" presented. *Post*, at 9.

There is also no designated evidence that Isgrig or anyone she was with had interacted with the window prior to it falling. An entire window with its casing and frame should not, in its ordinary use, fall out of the wall.

Unlike the stair railing in *Cergnul*, which *could* become loose over time, we do not find it is axiomatic that a whole window, frame included, can fall out of the wall in this way. *See Cergnul*, 785 N.E.2d at 332.

While our conclusion today varies somewhat from that in *Griffin*, it is important to note that the circumstances in this case differ in decisive ways. Unlike the plaintiff in *Griffin*, who picked up the box himself and failed to notice the missing staples on the bottom, Isgrig did not consciously interact with the window before it fell on her. This Court in *Griffin* also grappled with the fact that the box had come from a manufacturer and that the defendants, Menard Inc., typically do not make any changes to boxes as they are received. 175 N.E.3d at 813. Moreover, even though the defendants in *Griffin* inspect each section of the store and front facing of products, there was no evidence of when the box was last examined as they do not keep records or know when the box was first stocked, or know how long it had been sitting on that shelf prior to it falling on the plaintiff. *Id*. at 814. However, in this case, there is undisputed evidence that the University installed, and has a policy to maintain and inspect, their windows. The University also has documented that a year before this incident, in March 2017, a work order reported that the blinds were repaired, which would have required maintenance staff to remove the window from its casing and repair any known damage. Finally, the crucial difference that sets these cases apart is that the box in *Griffin* was not a fixture that could be traced to the responsibility of the store; it is in no way comparable to the window and casing which was affixed to the property and which fell without interference. For all these reasons, we find that the window was within the exclusive control and management of the University.

In order to rely on *res ipsa loquitur*, the plaintiff must also present evidence that the accident is one in which in the ordinary course of things does not happen if those who control the instrumentality use proper care. *Shull*, 477 N.E.2d at 927. The showing of this second element to establish *res ipsa loquitur* is a "high bar," but not impossible. *Griffin*, 175 N.E.3d at 816. The plaintiff can rely on evidence to demonstrate that such an event is so unusual that it would not ordinarily happen in the absence of someone's negligence. We find that Isgrig has met this burden, because

the evidence supports the assertion that this type of accident should not occur in the ordinary use of opening and closing a window. First, the University provided evidence that its maintenance procedures for its windows are reactive rather than proactive, which suggests that issues with the windows are uncommon and do not require proactive checking. Second, the Assistant Vice President of Facilities Operations, Energy Management, stated that a window falling out of its frame is an uncommon event. Finally, the University's carpenter testified that the window must be maneuvered in a precise manner and the sash springs unhooked in order for the window to come out of its casing. He also acknowledged that the sash springs in question are not visible when the window is in its case, which supports the assertion that they cannot be tampered with through ordinary use by other students. The fact that the University's own expert testified that an incident such as this does not happen in the ordinary wear and tear of opening and closing the window, illustrates that this accident does not ordinarily occur but for negligence. Moreover, the University has provided no information or evidence to refute the facts surrounding how the incident occurred. We find that given the evidence presented, Isgrig has satisfied her burden of showing that based on common knowledge, in its ordinary use, windows do not fall out of their casing in the way that this one did.

The dissent argues that Isgrig is relying on there being no explanation as to the cause of the accident to infer negligence on the University. We respectfully disagree. Unlike the handrailing in *Cergnul*, here, we find that it is not axiomatic for windows and frames to spontaneously fall off a building, striking and injuring invitees who merely happen to be in the vicinity. Like in *Rector*, even though "the evidence might indicate that [the University] did not know that the [window] had become loose or might fall, it does not answer the question of whether, in the exercise of reasonable care, [it] could have discovered the condition." 809 N.E.2d at 893. A landowner's duty to invitees is the exercise of reasonable care under the circumstances, which includes the duty to reasonably inspect and maintain the premises. We cannot say that a window falling out of its casing with its frame is "the sort of event which ordinarily happens if

those who have the management and control exercise proper care." *Id.* at 892.

As Isgrig has provided evidence that the injuring instrumentality is under the exclusive control of the University, and the accident is one which in the ordinary course of things does not happen if those who control the instrumentality use proper care, she may proceed on a theory of *res ipsa loquitur*. The dissent argues that Isgrig has failed to provide a theory for what could have possibly caused the window to fall out of its frame or what actually caused the window to fall. Therefore, she cannot prove that the University breached its duty or that the breach caused her injuries to succeed on a claim of negligence. *Post*, at 2.

Respectfully, we think this compounds the burden of proof required by a plaintiff that seeks to rely on *res ipsa loquitur*. The application of *res ipsa loquitur* only establishes that a duty exists, and a breach took place; the plaintiff nevertheless still bears the burden of proving the other elements of negligence. The invocation of *res ipsa loquitur* does not eliminate the need to show that the defendant's negligence was the proximate cause of the injury, and that the plaintiff suffered damage as a result. Once relied on, "the inference of negligence drawn from the facts does not disappear from the case, but instead remains, and is placed upon the scales to be weighed by the trier of fact." *Gold*, 720 N.E.2d at 1182.

## Conclusion

Building owners exercise management and control of fixtures attached to their buildings. Given the well-established duty of care that landowners owe to invitees, it follows that landowners should bear responsibility if invitees are injured by defective fixtures in buildings on their land. Should such circumstances arise where direct evidence is unavailable, plaintiffs in such cases may rely on the circumstantial evidence doctrine of *res ipsa loquitur* to infer negligence. This inference does not secure a finding of negligence, because the final determination is still left to the trier of fact. Such an inference, however, is enough for a plaintiff to survive summary judgment.

For these reasons, and based on the evidence presented, we conclude that Isgrig has demonstrated a genuine issue of material fact to infer that the University was negligent. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Rush, C.J., and Goff, J. concur.
Molter, J., dissents with separate opinion in which Slaughter, J., joins

ATTORNEY FOR APPELLANT

Timothy F. Devereux

Wagner Reese, LLP

Carmel, Indiana

ATTORNEYS FOR APPELLEES

Angela J. Della Rocco

Amy K. Fisher

McCarter & English, LLP

Carmel, Indiana

ATTORNEYS FOR AMICUS CURIAE

Lucy R. Dollens

Robert J. Palmer

Defense Trial Counsel of Indiana

Indianapolis, Indiana

**Molter, J., dissenting.**

Kiera Isgrig was studying for her final exams at a table in Indiana University's Swain Hall when a window fell from its frame and crashed onto her. She then sued the university to recover for her resulting injuries. But while she certainly didn't do anything wrong to cause her injuries, she also hasn't pointed to anything the university did wrong to cause the accident, so the trial court properly entered summary judgment for the university.

Under our premises liability law, the university is liable to Isgrig only if she can prove that the university was aware of—or with reasonable care should have been aware of—the defect causing the window to fall from its frame. But not only is there no evidence of that, all the evidence points in the other direction. Neither party can discern what defect caused the window to fall, but all the evidence suggests the university did not know of any defect, nor could it reasonably be expected to know of one. As Isgrig herself puts it, the evidence is "uncontroverted" that "[t]here were no warning signs that the window was about to fall from its casing." Appellant's Br. at 10.

Yet today the Court reverses the trial court's judgment based on the doctrine of res ipsa loquitur, which recognizes that an accident's circumstances can sometimes support an inference that the accident was likely caused by the defendant's negligence. The doctrine establishes an evidentiary rule of circumstantial evidence based on probability, so the inference can only arise when: (1) the defendant has exclusive control over what caused the injury, and (2) the accident is the sort usually caused by the defendant's negligence. Isgrig makes neither showing, and the Court's reasoning confuses an inference with the sort of speculation we typically hold is insufficient to defeat summary judgment.

I therefore respectfully dissent.

## I.

Isgrig's claim against the university is for negligence based on premises liability. "A plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and

(3) an injury proximately caused by the breach of duty." *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011). The duty a landowner owes its invitees is "a duty to exercise reasonable care" for the invitees' protection while on the premises. *Id.* at 406. And for conditions of the land that injure invitees, a premises owner is liable only if the owner:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

> (c) fails to exercise reasonable care to protect them against the danger.

*Id.* (quoting *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991)).

In this case, that means Isgrig's burden is to prove that the defect causing the window to fall out of its frame was a defect the university knew about or should have known about and that the university failed to take reasonable steps to fix or warn her about the defect. But there is no evidence of any of this. After discovery, she has no theory even for what could have *possibly* caused the window to fall out of its frame, let alone a theory about what probably *did* cause the window to fall. That means she can't prove any of the elements of her negligence claim—she can't prove the university breached a duty it owed her, and she can't prove that breach caused her injuries.

To fill those holes in her case, she turns to res ipsa loquitur.

## II.

The doctrine of res ipsa loquitur allows a plaintiff "to raise an inference that the defendant was negligent from the facts known to the plaintiff, but [where] proof of the specific negligent act or omission may be difficult or impossible." *Cox v. Paul*, 828 N.E.2d 907, 912 (Ind. 2005); *see also Res Ipsa Loquitur*, Black's Law Dictionary (12th ed. 2024) ("[T]he very occurrence of

the accident affords reasonable evidence, in the absence of the explanation by the parties charged, that it arose from the want of proper care."). Before the rule can supply an inference that the defendant breached a duty, the plaintiff must first establish what duty the defendant owed to the plaintiff. *Stubbs v. Hook*, 467 N.E.2d 29, 32 (Ind. Ct. App. 1984) (explaining that "res ipsa loquitur is a mechanism for proving breach of a duty, once the duty has been established"), *trans. denied.*

"In its inception the principle of res ipsa loquitur was merely a rule of evidence, permitting the jury to draw from the occurrence of an unusual event the conclusion that it was the defendant's fault." Restatement (Second) of Torts § 328D cmt. a (Am. L. Inst. 1965). The purpose for the rule, at least in the beginning, was to "level[ ] the playing field" between an injured plaintiff and a defendant who had access to all information or evidence about the injuring instrumentality but might not be inclined to share that with the plaintiff, as the rule encouraged the defendant to disclose at least relevant evidence to avoid the rule's application. Restatement (Third) of Torts: Phys. & Emot. Harm § 17 cmt. i (Am. L. Inst. 2010). Now, modern discovery and greater access to information and technology have diminished the need for the rule, but most states still generally allow a plaintiff to "invoke res ipsa even though the defendant is as ignorant of the facts of the accident as the plaintiff is." *Id.*

In Indiana, the doctrine still applies as an evidentiary tool, rather than a separate cause of action, allowing the inference of a defendant's negligent conduct under certain circumstances. *Rector v. Oliver*, 809 N.E.2d 887, 895 (Ind. Ct. App. 2004), *trans. denied.* But the rule has significantly narrowed from its original nineteenth-century form. The central inquiry now is "whether the incident probably resulted from the defendant's negligence rather than from some other cause." *Griffin v. Menard, Inc.*, 175 N.E.3d 811, 815 (Ind. 2021). And to establish an inference of negligence using res ipsa loquitur, the plaintiff must demonstrate "(1) that the injuring instrumentality was within the exclusive management and control of the defendant, and (2) the accident is of the type that ordinarily does not happen if those who have management and control exercise proper care." *Id.*

Here, Isgrig has shown neither.

## A.

First, the university did not have exclusive control over the window. In *Griffin*, we explained that in a premises liability case where a fixture caused the injury, res ipsa loquitur could permit an inference only "[i]f an injury results from a fixture or other component *that customers did not or could not disturb*—such as a chandelier suspended from the ceiling, or a set of shelves bolted to the wall . . . ." *Id.* at 816 (emphasis added). This limitation naturally flows from the rule's character as a tool of circumstantial evidence based on probability. The rule applies only if the type of accident that occurred is most often caused by the defendant's negligence rather than someone else's acts or omissions, and that is less likely if customers also could have caused the defect in a fixture.

The window here, by its very nature, is meant for anyone in the room to use, including by opening and closing it. While the university may have had exclusive control during window installation and maintenance, the classroom is open to students, faculty, and visitors, all of whom could have operated or manipulated the window during the year between the last completed maintenance and the accident. The university therefore did not have exclusive control over the window.

Isgrig's argument to the contrary misses the mark. Relying on an opinion from our Court of Appeals, she asserts that "[t]he element of 'exclusive control' is a *broad concept* which focuses upon who has the right or power of control and the opportunity to exercise it, rather than actual physical control." Appellant's Br. at 18 (quoting *Gold v. Ishak*, 720 N.E.2d 1175, 1182 (Ind. Ct. App. 1999), *trans. denied*) (emphasis added). Thus, Isgrig says, res ipsa's control element is met because "there is no question that the window in question was under the management and control of the [university] and its servants." *Id.* at 19. But res ipsa requires *exclusive* control. "Broad concept" or not, the ability of virtually any member of the public to interact with the window means the university did not have exclusive control. *See Griffin*, 175 N.E.3d at 815 (reasoning that it "just isn't the case here" that the store had exclusive control "because customers had access to" the injuring instrumentality).

By acknowledging "the window could have been tampered with by other invitees to Swain Hall," *ante*, at 18, the Court effectively concedes Isgrig cannot establish this element. Indeed, the decisions the Court relies on, *Griffin* and *Cergnul*, rejected the plaintiffs' res ipsa loquitur arguments precisely because there was merely an opportunity for third parties to interact with or use the injuring instruments, even though neither party offered evidence of third-party interactions. *Griffin*, 175 N.E.3d at 816 ("[I]t seems like speculation that the only way the sink could have fallen out of the box was because Menard was negligent when the box could have been handled/tampered with by another customer."); *Cergnul v. Heritage Inn of Indiana, Inc.*, 785 N.E.2d 328, 332 (Ind. Ct. App. 2003) (rejecting the plaintiff's res ipsa argument because "another guest could have vandalized the railing just before Cergnul used it"), *trans. denied.*

The Court says this analysis overlooks the "crucial facts" that the window "had two broken sash springs and fell out of its casing," and these "are not typical defects that would occur through the usual manipulation of opening and closing the windows by students, faculty or the general public." *Ante*, at 18. But Isgrig does not argue those are crucial facts; none of her briefs even mention sash springs. Presumably, that is because the undisputed evidence is that broken sash springs are common occurrences that do *not* cause windows to fall out of their casing.  As the trial court quoted the undisputed testimony from the university's carpenter:

> Sash springs . . . wear down over time, break, and sometimes need to be replaced . . . . Typically, when a sash spring is broken, a window may be difficult to open/close or may not stay in place. Sometimes sash springs break when a window is removed from its casing for other repairs. . . .

> Broken sash springs . . . do not allow a sash spring window like the one in [R]oom 138 to fall out of its casing without warning. Even with four broken sash springs, such a window is still held in its track in the casing.

App. Vol. 2 at 17.

Because Isgrig's res ipsa claim fails the exclusive control element, our analysis should end there. But even if she had established that element, the trial court was correct that she did not establish the second element.

B.

The second requirement for res ipsa loquitur is that the plaintiff must demonstrate that the accident "is of the type that ordinarily does not happen" absent the defendant's negligence. *Griffin*, 175 N.E.3d at 815. It bears emphasizing here what the standard is *not*. The standard is not simply that the accident ordinarily doesn't happen; not ordinarily happening is just part of what makes an event an accident. The standard also is not that the accident ordinarily happens as a result of just *anyone's* negligence; the standard is specific to the defendant, and the plaintiff must show this is the sort of accident that ordinarily results from negligence by someone in the *defendant*'s position (a premises owner in a case like this rather than, say, a nonparty product supplier). And the standard is not that the accident *could have* happened as a result of the defendant's negligence; the standard demands that this be the sort of accident that *ordinarily* results from the negligence of someone in the defendant's position.

This analysis first considers other accidents like the one in question and only then allows a "finding of negligence [to be] derived from knowledge of the causes of the type or category of accidents involved." Restatement (Third) of Torts: Phys. & Emot. Harm § 17 cmt. a (Am. L. Inst. 2010). The Third Restatement offers an example of how this inquiry should operate:

> Assume, for example, that a car driven by the defendant runs off the road, injuring a pedestrian. In considering this category of accidents—cars that run off the road—several possible causes can be identified, including motorist negligence; some mechanical problem with the car; some defect in the roadway; and very adverse weather conditions. If the jury can reasonably believe that motorist negligence is most often the cause when cars run off the road, then, absent further evidence about the

particular incident, the jury can reason from the general to the
particular and hence properly infer that the defendant motorist
was probably negligent.

*Id.*

When we consider the category of accidents here—windows that fall
out of their frame—neither Isgrig nor the Court identifies any possible
causes for those kinds of accidents, let alone possible *negligent* acts or
omissions that may have been committed *by the university*. And this is a
premises liability claim, so all agree the university is liable for negligence
only if it: (1) knew or by the exercise of reasonable care should have
known of a dangerous condition causing the injury; (2) should have
expected that its invitee would not discover or realize the danger; and (3)
failed to exercise reasonable care to protect against the danger. *Burrell*, 569
N.E.2d at 640. For res ipsa loquitur to satisfy any or all of these elements,
Isgrig must provide some basis for inferring that when windows fall out
of their frames, it is usually because of a defect that the property owner
knew or should have known about. Not, for example, as a result of an
internal defect or other deterioration in the window that the property
owner cannot reasonably be expected to know about, nor as a result of the
acts or omissions of nonparties like the window manufacturer or other
invitees.

Isgrig has made no such showing—either through expert testimony or
reference to common knowledge—and the only evidence in the record is
that the university did not know of any defect and that reasonable care
would not have led to discovering that defect. Indeed, Isgrig herself says it
is "uncontroverted" that "[t]here were no warning signs that the window
was about to fall from its casing." Appellant's Br. at 10. As the Court
rightly explains, a plaintiff asserting res ipsa loquitur typically "points to
several alternative explanations *involving negligence*," and the inference
merely relieves the plaintiff of the burden to produce evidence of "*which of
them* is more probable than the other." *Ante*, at 10 (emphases added). But
Isgrig doesn't identify any potential causes, so there is no basis to infer
that negligence by the university is more probable than any other
potential cause.

Isgrig is simply relying on the fact that there is "no explanation as to why the window spontaneously fell from its casing." Appellant's Br. at 27. But it is not enough to show that the accident occurred in "bizarre and rare circumstances," as the Court describes this accident. *Ante*, at 2. The plaintiff must connect those bizarre and rare circumstances to *likely* negligence *by the defendant*. *See Evans v. Hill*, 181 So. 847, 848 (Miss. 1938) (declining to infer the landowner's negligence as the cause of a window falling on a pedestrian's foot where "[i]t was not shown that the owner or landlord had any knowledge of a defective condition of the window sill or pegs in the window frame; or that reasonable inspection would have disclosed such defect as was shown"); *White v. Maurice L. Rothschild & Co.*, 11 N.W.2d 773, 775 (Minn. 1943) (finding the landowner not negligent after a window sill fell from a building because "there was a latent defect that no inspection could reveal" and "[t]o let a jury base a verdict against the owner of the building for negligence in this instance would be to make the owner an insurer against any injury from all defects in a building"); *Hogan v. Miller*, 314 P.2d 230, 235 (Cal. Ct. App. 1957) (holding multiple defendants not liable for "the failure to discover and remedy the bent condition of the steel brackets on the window" which caused the window to fall on the plaintiff because "under the facts of this case none of the defendants sued herein owed a duty to inspect and thereby discover such condition").

By accepting Isgrig's argument, the Court turns the res ipsa loquitur framework upside down. The Court does not first demonstrate—either through common knowledge or reference to evidence from an expert—that this sort of accident usually results from a landowner's negligence and then allow the jury to infer what happened here from what usually happens, which is how res ipsa loquitur is supposed to work. Instead, the Court reasons that because nobody has any idea what might have happened here, the jury can somehow infer from that mystery that the university was probably negligent. That is speculation disguised as res ipsa loquitur, which leads to the final point.

## III.

Lastly, I worry the Court's analysis confuses an inference with the sort of speculation we typically hold is insufficient to defeat summary judgment.

As the Court explains, res ipsa loquitur "is a rule of circumstantial evidence that may be used to infer negligence." *Ante*, at 2. Inferences aren't guesses, though; they are logical deductions from other facts. *See Lewis v. State*, 535 N.E.2d 556, 559 (Ind. Ct. App. 1989) ("An inference is a process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts already proved or admitted. . . . However, a factfinder's determination cannot stand if it is based upon mere speculation or conjecture or on an inference on another inference."). And Isgrig does not point to any facts from which to deduce that it is more likely that the window fell as a result of the university's negligence rather than some other cause.

To be sure, "Isgrig does not have to disprove every other possibility to rely on res ipsa loquitur and infer that the University was negligent." *Ante*, at 18. But she does have to provide *some* basis for making that inference. And just as it would have been speculative in *Griffin* to guess that the sink fell through the box as a result of Menard's handling rather than a customer's handling, *see Griffin*, 175 N.E.3d at 816, it is speculative here to guess that the window fell as a result of the university's negligent handling a year earlier rather than a non-negligent cause, like a broken component that is difficult to discover, or invitees' more recent interactions with the window, *see Staat v. Indiana Dep't of Transp.*, 177 N.E.3d 427, 432 (Ind. 2021) ("While our summary-judgment standard requires us to make inferences in favor of the nonmoving party, those inferences must be reasonable, not mere conjecture or speculation." (quotations omitted)). Thus, Isgrig's res ipsa claim fails because she cannot support any inference establishing the university's negligence.

## IV.

It is "a high bar" to show that an accident ordinarily would not occur absent the defendant's negligence. *Griffin v. Menard, Inc.*, 175 N.E.3d 811, 816 (Ind. 2021). And "[t]here are many types of accidents which commonly occur without the fault of anyone," like a tire blowing out or some unexpected medical complications, so we cannot always presume that there was a negligent actor "because it is common human experience that such events all too frequently occur without such negligence." Restatement (Second) of Torts § 328D cmt. c (Am. L. Inst. 1965). This unfortunate accident, tragic as it was, seems to be just that type—an accident that the university could not have protected Isgrig from because it did not know, and could not reasonably be expected to know, about the window's potential danger.

For these reasons, I respectfully dissent.


Slaughter, J., joins.